**In re Mark Edward CHRUSZ, Debtor.**

**MBNA AMERICA, Plaintiff,**

**v.**

**Mark Edward CHRUSZ, Defendant.**

**Bankruptcy No. 95–11426–MWV.**
**Adv. No. 95–1162–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

May 16, 1996.

**222**

Grenville Clark, Gray, Wendell & Clark, P.C., Manchester, NH, for Plaintiff.

Terrie Harman, Harman Law Offices, Portsmouth, NH, for Defendant.

Jeffrey Schreiber, Chapter 7 Trustee, Schreiber & Associates, Danvers, MA.

Gerri Karonis, Manchester, NH, for United States Trustee.

## MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it the complaint of MBNA America ("Plaintiff") against Mark Edward Chrusz ("Defendant") seeking that a certain access check in the amount of $16,000 used by the Defendant be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(C) (Count II) and 523(a)(14) (Count IV). The Court has previously grant-

ed summary judgment to the Defendant with respect to Counts I and III of the complaint. An evidentiary hearing was held on the remaining two counts on May 15, 1996. The Court finds for the Defendant on Count II and for the Plaintiff in the amount of $13,-641.60 on Count IV.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

On April 15, 1995, the Defendant, a dentist, wrote an MBNA access check on his Master-Card account in the amount of $16,000. The check was made out to "Cash Deposit" and in the space entitled "For," the Defendant made the following notation: "Bus/IRS/Taxes." This check, plus an additional $10,000, was deposited in the Defendant's checking account on April 17, 1995. Defendant's check ledger (Defendant's Exhibit No. 110) shows Defendant wrote checks on April 16 and 17, 1995, in the total amount of $28,-007.04, including a check to the Internal Revenue Service for $24,887. The balance in the Defendant's checking account as shown on the bank statement for April 17, 1995, was $29,188.47. (Plaintiff's Exhibit No. 14.) The Defendant filed bankruptcy under Chapter 7 of the Bankruptcy Code on June 14, 1995, within sixty days of the use of the Plaintiff's access check.

### DISCUSSION

**I. Count II: Exception to Discharge Under 11 U.S.C. § 523(a)(2)(C)**

Section 523(a)(2)(C) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . . .

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act.

11 U.S.C. § 523(a)(2)(C) (1996).

Under section 523(a)(2)(C), cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual within sixty days before the order for relief are presumed to be nondischargeable. It is undisputed that the Defendant used the $16,000 access check within the sixty day presumption period. At the hearing on May 15, 1996, the Defendant did not contest the fact that the access check in the amount of $16,000 was an extension of open end credit pursuant to this section, and the Court will so find.

The Court, in its May 9, 1996, opinion on summary judgment, had previously ruled that because of the nature of the transaction, the Plaintiff could not prove the requisite element of reliance and, thus, could not prove false pretenses, false representations or actual fraud. Thus, the issue before the Court is whether the Defendant could successfully rebut the presumption of nondischargeability under section 523(a)(2)(C). In order to rebut the presumption, the Defendant's "evidence must raise a substantial doubt in the mind of the trier of fact as to the existence of the presumed intent." *FCC Nat'l Bank v. Orecchio (In re Orecchio)*, 109 B.R. 285, 290 (Bankr.S.D.Ohio 1989). The legislative history of section 523(a)(2)(C) reveals that the section was added to prevent " 'loading up' or credit buying sprees in contemplation of bankruptcy." *Bank One Lafayette, N.A. v. Larisey (In re Larisey)*, 185 B.R. 877, 881 (Bankr.M.D.Fla.1995). For the reasons stated below, the Court finds that the Defendant has successfully rebutted the presumption and denies Count II of the complaint.

The Court has to admit that its decision is a close call. Both Plaintiff and Defendant revealed credible evidence in support of their positions. The Plaintiff showed that the Defendant, at the time surrounding the issuance of the access check, had negative net income, was twenty-four months behind on the second mortgage obligation on his office building and was facing an IRS payment in excess of $24,000. The Defendant, on the other hand, provided credible evidence that he was a successful dentist with gross sales for the past three years in excess of $300,000, had substantial divorce obligations, which he met, and had recently extricated himself from a professional relationship which was not working. For the year previous to the use of the check, the Defendant had made monthly payments on his MasterCard account, usually in excess of the minimum payment due, and also made at least one payment after the issuance of the check. Ms. Chouman, a representative of the Plaintiff, testified that based on his "behavioral score," the Defendant was considered a good account. The Defendant testified that the idea of bankruptcy was triggered in early May 1995 when he received a demand letter on the second mortgage obligation and consulted with an attorney, who ultimately recommended him to bankruptcy counsel. He first met with bankruptcy counsel on May 30 or 31, 1995.

Based on all of the above, the Court cannot find that at the time of the issuance of the check, the Defendant intended not to pay his obligations on the MasterCard or that he contemplated bankruptcy. Despite severe financial obligations in the past, due largely

from his divorce, he had been able to survive, and he testified that he believed his dental practice would be revived to the point where he could pay his obligations. With hindsight, whether this belief was realistic is questionable, but the Court finds it sufficient to rebut the presumption and, thus, denies Count II of the complaint.

## II. Count IV: Exception to Discharge Under 11 U.S.C. § 523(a)(14)

■ Section 523(a)(14) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(14) incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1).

11 U.S.C. § 523(a)(14) (1996).

The Defendant does not fare so well under Count IV. The Court finds for the Plaintiff on Count IV and excepts from discharge the amount of $13,641.60 for the following reasons. Under section 523(a)(14), a debt incurred for the payment of a tax to the United States will be nondischargeable to the same extent it would be nondischargeable under section 523(a)(1). There is no question that the tax paid by the Defendant on April 16, 1995, would have been nondischargeable under section 523(a)(1) if not paid to the IRS.

The Defendant argues that because there are other funds in the account, other sources of funds, other checks paid, a balance higher than shown on the bank statement for April 14, 1995, and deposits made after April 17, 1995, all as shown on Defendant's Exhibit No. 112, that the maximum that could be excepted from discharge is the sum ᐧof $3,483.30. The Defendant further argues that since the access check was made out to "Cash Deposit" and not to the IRS, the Plaintiff cannot prove that these specific funds went to the IRS. The Court disagrees with both arguments.

The facts show that the Defendant deposited the access check on April 17, 1995, together with an additional $10,000 for a total deposit of $26,000. On April 16 and 17, 1995, the Defendant wrote checks totaling $28,007, including the $24,887 check to the Internal Revenue Service. The bank statement shows a balance of $29,188.47 on April 17, 1995. The language of section 523(a)(14) is "a debt incurred" to pay a tax to the United States. The Defendant would have the Court find that all of the other funds in this account on April 17, 1995, went to the IRS and the $16,000 access check went to the payment of all other obligations. This is unrealistic at best.

■ Since commingled funds in a bank account cannot be specifically traced, the Court must formulate what portion of the access check most probably went to pay a tax obligation to the United States. In order to do this, the Court has determined that the check to the Internal Revenue Service equaled 85.26 percent of the bank statement balance on April 17, 1995, of $29,188.47. The Court has then applied this percentage to the $16,000 access check (16,000 × 85.26%) for a result of $13,641.60, which the Court finds is the amount excepted from discharge.

In order to reach this formulation, the Court gives no weight to the alleged balance of $31,997.22 written on the April 17, 1995, deposit slip, the fact that other deposits were made before the IRS check cleared on April 26, 1995, or the fact that the Defendant had an overdraft line of credit that could have been used to partly pay the Internal Revenue Service obligation. The Court finds the most credible evidence to be the Defendant's ledger for the checks written on April 16 and 17, 1995, and the bank statement for the date of the deposit, the amount of the deposit and the balance in the account on April 17, 1995.

■ The Plaintiff has further requested attorney fees in connection with this adversary proceeding. The Court denies the Plaintiff's request for attorney fees on the grounds that section 523(a)(14) only excepts from discharge a debt incurred for the tax payments to the United States. Attorney fees are not such a debt and the Court does not have to reach the issue as to whether or not there was any contractual agreement to pay attorney fees.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.