In re Sean L. DINAN and Stacey M. Dinan, Debtors.

Harry C. Fry, Appellant,

v.

Sean L. Dinan; Stacey M. Dinan, Appellees.

BAP No. NV–10–1298–KiDH.

Bankruptcy No. 07–50089.

Adversary No. 07–05073.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 18, 2011.

Decided April 22, 2011.

Carole Marie Pope argued for appellant, Harry Fry.

Christopher Burke argued for appellees, Sean and Stacey Dinan.

Before: KIRSCHER, DUNN, and HOLLOWELL, Bankruptcy Judges.

## OPINION

KIRSCHER, Bankruptcy Judge.

In this appeal, we address an issue of first impression in this or any other circuit: whether an award of attorney's fees and/or costs in connection with a judgment under 11 U.S.C. § 523(a)(14)[1] is nondischargeable. We conclude that it is.

Appellant, Dr. Harry C. Fry ("Fry"), appeals an order from the bankruptcy court awarding Fry attorney's fees and costs in connection with a denial of discharge and nondischargeability action he prosecuted against appellees-debtors, Sean L. Dinan ("Sean") and Stacey M. Dinan ("Stacey") (collectively "Dinans"). We AFFIRM the costs award. However, we VACATE the attorney's fee award and REMAND that issue to the bankruptcy court for a reasonableness determination under Nevada law.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Factual Background.

On or around October 10, 2003, Fry loaned Dinans $165,000 for their sole proprietorship, Terra Firma, as evidenced by a written Agreement to Loan Money and Promissory Note ("Loan"). The Promissory Note includes an acceleration clause which states that "the entire sum of principal and interest, including guaranteed interest, then unpaid, plus any prepayment penalties," would become due and payable upon either party filing bankruptcy. The

Promissory Note also includes an attorney's fees clause:

> Each maker agrees to pay all costs and expenses incurred in enforcing collection of any portion of this note by suit or otherwise, including a reasonable attorney's fee, if an attorney is used in such collection. If suit is instituted for collection, the Court shall adjudge the attorney's fee allowed.

In exchange for the Loan, Dinans gave Fry a security interest in various construction equipment and vehicles used in their business. Fry perfected his security interest in the equipment and vehicles by filing a UCC–1 Statement with the Nevada Secretary of State.

The Dinans eventually defaulted on the Loan in August 2005. On or around July 10, 2006, Fry sent Dinans a letter informing them of their default of 12 months and that he was commencing foreclosure proceedings per the Loan. Fry requested that Dinans turn over the equipment and vehicles given as security so that he could take possession of them. About one month later, on August 4, 2006, Fry sent Dinans a follow-up letter stating that he would soon be selling the equipment and vehicles, about which Dinans would receive notice, but that certain items given as collateral had not yet been turned over to Fry. Fry asked Dinans to turn over the missing items and/or any proceeds they received if they had sold any of these items.

On October 6, 2006, Fry caused to be published in the Reno Gazette–Journal a Notification of Disposition of Collateral ("Notice of Sale"). On that same date, Fry sent Dinans a certified copy of the Notice of Sale. On October 21, 2006, Fry held an auction for the equipment and

---

1. Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

vehicles. Four vehicles were sold for a total of $12,550. Fry later sold some other pieces of equipment; a few smaller items Fry repossessed were stolen. Fry attempted to conduct another auction for the remaining items, but no auction company was interested in holding the sale because of the items' poor condition. Ultimately, Fry realized about $16,000 in selling the collateral, which included a credit for the stolen items.

In January 2007 Fry filed a collection action against Dinans in state court, but the case was stayed once Dinans filed a voluntary chapter 7 petition for relief on February 1, 2007.

## B. Procedural History.

### 1. Proceedings for Fry's Denial of Discharge and Nondischargeability Actions.

On May 7, 2007, Fry filed a complaint seeking to deny Dinans a discharge under sections 727(a)(2)(a), (a)(4), and (a)(5), and to determine the Loan as a nondischargeable debt under sections 523(a)(2) and (a)(4).[2] Fry later amended his two nondischargeability claims for one claim under section 523(a)(14).[3] Fry alleged that the Loan was nondischargeable because Dinans had used the proceeds to pay outstanding 940 and 941 payroll taxes owed to the IRS. In their answer, Dinans denied all of Fry's allegations, specifically denying that the Loan was used to pay taxes owed to the IRS.

In his pretrial brief, Fry contended that Dinans' outstanding payroll tax debt was at least $104,861.83 according to a September 3, 2003 balance sheet for Terra Firma. Fry contended that Dinans needed the Loan to pay this amount to stay in business, and it was for this purpose that Fry made the Loan. Fry further contended that the total deficiency owed to him by Dinans was $193,477.36, which included the unpaid principal, interest, late charges, an advance of $1,500, and a $16,000 credit for monies Fry realized in selling the collateral.

Dinans conceded that the total deficiency owed to Fry was $193,477.36, but contended that they were not obligated to pay it because Fry failed to give proper notice of the sale of the collateral under Nev.Rev. Stat. § 482.516.[4] Therefore, Dinans asserted that because Fry had no enforce-

---

**2.** The bankruptcy court determined that Fry failed to meet his burden for any claim under section 727(a). Fry does not appeal that ruling. Therefore, we discuss only facts pertinent to Fry's prevailing nondischargeability claim.

**3.** At a pretrial hearing, the bankruptcy court questioned why Fry asserted a nondischargeability claim under sections 523(a)(2) and (a)(4) as opposed to section 523(a)(14). In response, Fry said that his claims for relief under sections 523(a)(2) and (a)(4) were a typographical error, and he moved to amend the complaint to include a claim for relief under section 523(a)(14), to which Dinans objected. The bankruptcy court never ruled on the motion, but Dinans made no objections at trial regarding any evidence supporting such a claim.

**4.** Nev.Rev.Stat. § 482.516 provides:

1. Any provision in any security agreement for the sale or lease of a vehicle to the contrary notwithstanding, at least 10 days' written notice of intent to sell or again lease a repossessed vehicle must be given to all persons liable on the security agreement. The notice must be given in person or sent by mail directed to the address of the persons shown on the security agreement, unless such persons have notified the holder in writing of a different address.

2. The notice:
 (a) Must set forth that there is a right to redeem the vehicle and the total amount required as of the date of the notice to redeem;
 (b) May inform such persons of their privilege of reinstatement of the security agreement, if the holder extends such a privilege;
 (c) Must give notice of the holder's intent to resell or again lease the vehicle at the expi-

able claim, he had no standing to bring a nondischargeability action against them.

The bankruptcy court held a one-day trial on Fry's claims on January 13, 2010. At the start of trial, the parties moved to admit Exhibit # 1—written factual stipulations the parties agreed upon the night before. In the stipulation, Dinans conceded the following facts:

- Dinans represented to Fry that they would use the Loan proceeds in part for paying outstanding payroll taxes to the IRS;
- Dinans deposited the $165,000 proceeds into their bank account on October 13;
- on October 13, Dinans' bank account reflected a deficit of $32,193.22;
- between October 13, 2003 and October 30, 2003, Dinans made deposits into their account from other sources which totaled $113,106.88;
- between October 13, 2003 and October 30, 2003, checks and other withdrawals from Dinans' bank account totaled $115,738.77;
- on October 30, 2003, Dinans paid the IRS $107,001.32 with two checks, one for $62,506.08 and the other for $44,495.24.

The bankruptcy court announced orally its decision in favor of Dinans on the section 727 claims. However, it reserved ruling on the nondischargeability claim and requested that the parties submit further briefing about the Notice of Sale under Nevada law.

In his post-trial brief, Fry contended that NEV.REV.STAT. § 104.9613 [5] applied in

---

ration of 10 days from the date of giving or mailing the notice;

(d) Must disclose the place at which the vehicle will be returned to the buyer or lessee upon redemption or reinstatement; and

(e) Must designate the name and address of the person to whom payment must be made.

3. During the period provided under the notice, the person or persons liable on the security agreement may pay in full the indebtedness evidenced by the security agreement. Such persons are liable for any deficiency after sale or lease of the repossessed vehicle only if the notice prescribed by this section is given within 60 days after repossession and includes an itemization of the balance and of any costs or fees for delinquency, collection or repossession. In addition, the notice must either set forth the computation or estimate of the amount of any credit for unearned finance charges or cancelled insurance as of the date of the notice or state that such a credit may be available against the amount due.

**5.** NEV.REV.STAT. § 104.9613 provides:

Except in a consumer-goods transaction, the following rules apply:

1. The contents of a notification of disposition are sufficient if the notification:

(a) Describes the debtor and the secured party;

(b) Describes the collateral that is the subject of the intended disposition;

(c) States the method of intended disposition;

(d) States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

(e) States the time and place of a public disposition or the time after which any other disposition is to be made.

2. Whether the contents of a notification that lacks any of the information specified in subsection 1 are nevertheless sufficient is a question of fact.

3. The contents of a notification providing substantially the information specified in subsection 1 are sufficient, even if the notification includes:

(a) Information not specified by that subsection; or

(b) Minor errors that are not seriously misleading.

4. A particular phrasing of the notification is not required.

5. The following form of notification and the form appearing in subsection 3 of NRS 104.9614, when completed, each provides sufficient information: ....

this case because it governs the disposition of collateral under the UCC; i.e., selling pieces of equipment and vehicles given as security for a loan to a business. Contrary to Dinans' position, Fry argued that NEV.REV.STAT. § 482.516 applied only to sellers or lessors selling a consumer's repossessed vehicle. Finally, Fry contended that per the terms of the Promissory Note he was entitled to attorney's fees.

Dinans argued that only two issues remained to be decided: what portion of the Loan proceeds went to pay taxes, and whether Fry's Notice of Sale violated Nevada law. Dinans asserted that because of the subsequent withdrawals they made on their account before they paid the IRS on October 30, but after depositing the Loan proceeds on October 13, only a portion of the $107,001.32 could be traced to the IRS payments based on a first-in first-out ("FIFO") accounting approach. Hence, only $17,068.01 could be traced to the IRS, and only that amount would be nondischargeable, presuming Fry's Notice of Sale complied with Nevada law, which Dinans disputed.

If NEV.REV.STAT. § 104.9613 applied, the parties agreed that Fry's Notice of Sale was sufficient and he would be entitled to a nondischargeable deficiency judgment. Conversely, if NEV.REV.STAT. § 482.516 applied, the parties agreed that Fry's Notice of Sale was not sufficient and his claim failed.

On March 1, 2010, the bankruptcy court issued its Findings of Fact, Conclusions of Law and Order. The court rejected Dinans' tracing and FIFO theories and determined that their payments to the IRS totaling $107,001.32 represented a nondischargeable obligation to Fry under section

523(a)(14).[6] However, the court agreed with Dinans that NEV.REV.STAT. § 482.516 applied. Accordingly, Fry's Notice of Sale was insufficient, he was considered paid in full, and his deficiency claim was barred. The court entered a judgment in favor of Dinans on March 4, 2010, dismissing the adversary proceeding.

Fry moved to alter or amend the March 4 judgment ("Rule 9023 Motion"), contending that the bankruptcy court misapplied Nevada law; legislative history showed that § 482.516 did not apply in this case. Therefore, contended Fry, his Notice of Sale was proper under § 104.9613, and he was entitled to a nondischargeable judgment under section 523(a)(14) for $107,001.32. Dinans opposed the Rule 9023 Motion.

The bankruptcy court entered an order on Fry's Rule 9023 Motion on April 14, 2010. The court reversed its decision and concluded that NEV.REV.STAT. § 104.9613 applied; therefore, Fry's Notice of Sale was proper and he was entitled to a deficiency. However, even though Dinans made no request for relief from the March 4 judgment, the court reversed itself and accepted Dinans' tracing and FIFO theories. As a result, Fry was entitled to a nondischargeable judgment under section 523(a)(14), but only for $17,068.01. On April 26, 2010, the bankruptcy court entered an amended judgment memorializing its decision set forth in the April 14 order.

### 2. Proceedings for Fry's Attorney's Fees and Costs.

On May 4, 2010, Fry filed a Bill of Costs for filing fees, service of the summons and complaint, witness fees, deposition costs,

---

**6.** Section 523(a)(14) provides in relevant part: "(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(14) incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1)."

and process server fees for a total of $2,366.87. In support of the bill, Fry's counsel, Carole M. Pope ("Pope"), filed an affidavit with receipts for the expenses.

Dinans objected to Fry's Bill of Costs and filed a Motion to Retax Costs. Dinans argued that a majority of the costs were related to Fry's section 727 claims, which were determined in Dinans' favor. Specifically, Dinans argued that no discovery was necessary with respect to the issues under section 523(a)(14) because the parties had entered into a stipulated version of the facts. Dinans further contended that Fry was not entitled to any costs under Rule 7054(b) [7] because he was not the prevailing party.

Fry opposed Dinans' Motion to Retax Costs contending that not all costs were related to the section 727 claims. Specifically, Fry contended that even though the parties had stipulated to the facts supporting Fry's section 523(a)(14) claim, Dinans did not admit these facts until the day before trial. Fry further contended that, despite repeated promises from Dinans' counsel, he also did not receive Dinans' financial records reflecting the amount of taxes paid until the day before trial. Moreover, Fry argued, the depositions of Sean, Stacey, and Fry focused primarily on the whereabouts of certain collateral securing the loan that was never found and whether Fry's Notice of Sale was proper. Finally, Fry argued that he was the prevailing party and entitled to costs because he received a judgment for a portion of the debt.

Shortly after filing his Bill of Costs, Fry moved for attorney's fees ("Motion for Attorney's Fees") on May 10, 2010, requesting $55,361.50, or an "amount[ ] as the Court determine[d] to be reasonable...."

Fry contended that, as the prevailing party in a collection suit, he was entitled to reasonable attorney's fees per the terms of the Promissory Note. In support of his motion, Fry included copies of Pope's itemized time records and an affidavit from Pope.

Dinans opposed Fry's motion contending that not only was Fry's fee request more than three times what he recovered, but that Fry was not entitled to any attorney's fees because he prevailed only on a federal issue, nondischargeability under section 523(a)(14), not a state law issue.

In his reply, Fry countered that a state law issue was decided, Fry's Notice of Sale under Nevada law, which Dinans contested. Fry asserted that before the bankruptcy court could determine whether or not the debt was nondischargeable under section 523(a)(14), it had first to determine the enforceability of the debt under state law. In other words, Fry's nondischargeability claim rested entirely on whether he provided a proper Notice of Sale. Therefore, asserted Fry, he was entitled to reasonable attorney's fees under Nevada law.

The bankruptcy court heard Fry's Bill of Costs, Dinans' Motion to Retax Costs, and Fry's Motion for Attorney's Fees on June 23, 2010. Pope contended that Fry's entitlement to attorney's fees was supported by *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Upon Pope's statement, the court responded:

> I'm familiar with the case. It looks to me like what we've done here is you came in with a non–727 case, and that was all denied. And most of the depositions you've taken with the bank officers and the so forth attached to the evidence

---

7. Rule 7054(b) provides in relevant part: "The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides."

that had to do with the 727. It certainly didn't have to do—anything to do with what I finally did in the final Order. And I just think that with regard to the attorney fees of $55,361.50, if I proportion that out against your request for recovery of $165,000 versus what you've got, about $17,000 would be about ten percent. And that's about the—what you've recovered.

And I just—that fee to me is just absolutely exorbitant, and I'm not going to award such a fee for such a recovery. That's three times the—for recovery. That's not reasonable.

And as far as the costs are concerned, I've went over those; .... It seems to me that those are all related to the 727 provisions in the Complaint.... And I don't see how they touched upon the Final Judgment that I gave you....

Hr'g Tr. 4:2–25 (June 23, 2010). Ultimately, the bankruptcy court awarded Fry $337 in costs for filing and service fees, and awarded him $2,000 for attorney's fees. An order was entered to that effect on July 21, 2010. Fry timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court abuse its discretion by awarding Fry only $2,000 out of $55,361.50 requested in attorney's fees?

2. Did the bankruptcy court abuse its discretion by awarding Fry only $337 out of $2,366.87 requested in costs?

**8.** Section 523(a)(1) provides in relevant part:

## IV. STANDARD OF REVIEW

■ We review a bankruptcy court's determination on attorney's fees for abuse of discretion or erroneous application of the law. *Bertola v. N. Wisc. Produce Co. (In re Bertola)*, 317 B.R. 95, 99 (9th Cir. BAP2004). In applying an abuse of discretion test, we first determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.2009). If it did, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2)implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. *Id.*

■ To the extent the issue is whether Nevada law allows the award of attorney's fees, our review is de novo. *Bertola*, 317 B.R. at 99.

## V. DISCUSSION

### A. The Bankruptcy Court Abused Its Discretion When It Awarded Fry Only $2,000 In Attorney's Fees.

#### 1. Elements of a Section 523(a)(14) Claim.

Section 523(a)(14) excepts from discharge any debt incurred to pay a tax to the United States if that tax would be nondischargeable under section 523(a)(1).[8]

A discharge under section 727 ... does not discharge an individual debtor from any debt—

Taxes nondischargeable under section 523(a)(1) include 940 and 941 employer payroll taxes. *See* section 507(a)(8)(C).[9]

■ Section 523(a)(14) was added to the Bankruptcy Code in part to limit prebankruptcy substitution of a dischargeable obligation for one that is nondischargeable. *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 396 (6th Cir. BAP 1998) (Lundin, J., dissenting); *Am. Express Centurion Bank v. Gavin (In re Gavin)*, 248 B.R. 464, 465 (Bankr.M.D.Fla. 2000) ("Section 523(a)(14) eliminates potential benefits of substituting nondischargeable tax debt under [s]ection 523(a)(1) with dischargeable credit card debt."); *Am. Express Bank, FSB v. Cook (In re Cook)*, 416 B.R. 284, 289 (Bankr.W.D.Va.2009) (same).

■ To prevail on a claim under section 523(a)(14), the creditor must show that: (1) the debt was incurred to pay a tax to the United States; and (2) the tax owed to the United States would have been nondischargeable under section 523(a)(1) if it had not been paid prepetition. *Ramey v. Barton (In re Barton)*, 321 B.R. 877, 879

(Bankr.N.D.Ohio 2005). Some bankruptcy courts further require the creditor to trace the portion of the debt attributable to paying the tax. *See MBNA Am. v. Chrusz (In re Chrusz)*, 196 B.R. 221, 224 (Bankr. D.N.H.1996).

## 2. *Cohen v. de la Cruz* controls.

■ The bankruptcy court did not set forth its reasoning why it awarded Fry attorney's fees, only that it was doing so in the amount of $2,000. We now analyze whether Fry was entitled to attorney's fees in connection with his nondischargeability claim under section 523(a)(14).[10]

Attorney's fees, under the American Rule, ordinarily are not recoverable by the prevailing party in an action except by contract or by statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Further, no general right to receive attorney's fees exists under the Bankruptcy Code. *Bertola*, 317 B.R. at 99.[11]

---

(1) for a tax or a customs duty—
(A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed[.]

**9.** Section 507(a)(8)(C) provides in relevant part:
The following expenses and claims have priority in the following order:
(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity.

**10.** On appeal, Dinans argue that Fry was not entitled to any attorney's fees. However, Dinans conceded at oral argument that they did not cross appeal the bankruptcy court's ruling on this issue. Absent a cross appeal, we will not consider their argument. *See Lee v. Burlington N. Santa Fe Ry. Co.*, 245 F.3d 1102, 1107 (9th Cir.2001) (without cross appealing

a party may only urge to preserve a judgment; it may not seek to decrease its monetary liability).

**11.** Although Fry cited *Cohen* at the bankruptcy court hearing and before us at oral argument, he relies upon *Ford v. Baroff (In re Baroff)*, 105 F.3d 439 (9th Cir.1997), in his brief as the legal basis for his attorney's fees. *Baroff* held that whether fees may be awarded in bankruptcy proceedings generally depends on whether the case involves state or federal claims and whether the applicable law allows such fees. 105 F.3d at 441. However, the Panel held in *AT&T Universal Card Servs. Corp. v. Pham (In re Pham)*, 250 B.R. 93, 99 (9th Cir. BAP 2000), that *Baroff* no longer retains any vitality in nondischargeability actions in light of *Cohen*. *See also Bertola*, 317 B.R. at 99–100 (upholding award of attorney's fees in action under section 523(a)(6) based on *Cohen* ).

In a post-*Travelers*[12] context, the Panel confirmed in *Levitt v. Cook (In re Levitt)*, BAP No. AZ–07–1166, 2008 WL 8448069 (9th Cir. BAP July 22, 2008), that while *Travelers* supports the proposition that an unsecured creditor may assert a postpetition claim against the estate for attorney's fees if governing contracts and state law permit such fees, such cases apply to claims against the estate, not to nondischargeable claims against the debtor. In nondischargeability actions, *Cohen* applies. While we are not bound by our unpublished cases like *Levitt*, we find it particularly persuasive. *See* Fed. R.App. P. 32.1; 9th Cir. BAP Rule 8013–1. *See also Charlie Y., Inc. v. Carey (In re Carey)*, 446 B.R. 384, 390 (9th Cir. BAP 2011) (supporting this principle).

In *Cohen*, the Supreme Court held that the discharge exception under section 523(a)(2)(A) applies to all liability arising on account of a debtor's fraudulent conduct. 523 U.S. at 223, 118 S.Ct. 1212. To reach this determination, the Court interpreted the statutory language of "debt for" and concluded that the phrase "debt for" as used in section 523 means "debt as a result of," "debt with respect to," or "debt by reason of," and includes as nondischargeable any treble damages, attorney's fees, costs, and "other relief that may exceed the value obtained by the debtor." *Id.* Because the creditors in *Cohen* were entitled to treble damages and attorney's fees and costs under state law for the debtor's fraudulent conduct, the entire debt was nondischargeable, including the attorney's fees and costs.

Therefore, under *Cohen*, the determinative question for awarding attorney's fees is whether the creditor would be able to recover the fee outside of bankruptcy under state or federal law. *Levitt*, BAP No. AZ–07–1166, 2008 WL 8448069; *Bertola*, 317 B.R. at 99–100 (if creditor could recover attorney's fees in a nonbankruptcy court those fees will be recoverable); *Kilborn v. Haun (In re Haun)*, 396 B.R. 522, 528 (Bankr.D.Idaho 2008) (determining *Cohen* applies to attorney's fees awards in nondischargeability actions and holding that inquiry for recovery of fees is whether creditor would be entitled to fees in state court for "establishing those elements of the claim which the bankruptcy court finds support a conclusion of nondischargeability.").

The Supreme Court did not limit its holding in *Cohen* to cases only under section 523(a)(2)(A). The Court also cited sections 523(a)(1)(B), (a)(4), (a)(6), and (a)(9) as clear examples of instances in which damages, including attorney's fees, that exceed actual damages would be nondischargeable. 523 U.S. at 219–20, 118 S.Ct. 1212. Notably, *Cohen* did not cite section 523(a)(14) specifically, presumably because it does not include the words "debt for" but uses the language "debt incurred to pay." Nonetheless, the Supreme Court in *Cohen* did cite section 523(a)(1)(B),[13] which does contain the

---

**12.** *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 452–54, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), *abrogating Fobian v. W. Farm Credit Bank (In re Fobian)*, 951 F.2d 1149 (9th Cir.1991), which held generally that attorney's fees will not be awarded where the litigation involves issues peculiar to bankruptcy rather than issues involving basic contract enforcement.

**13.** Section 523(a)(1)(B) provides in relevant part:
> (a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt—
> (1) for a tax or a customs duty—
> (B) with respect to which a return, or equivalent report or notice, if required—
> (i) was not filed or given; or
> (ii) was filed or given after the date on which such return, report, or notice was

words "debt for," and the Court read section 523(a)(1)(B) *in pari materia* with section 523(a)(1)(A) and applied the same logic to both.

For a claim under section 523(a)(14), the court must read paragraph (a)(14) in conjunction with paragraph (a)(1). Why the Court in *Cohen* chose to cite subparagraph (B) of section 523(a)(1) as opposed to subparagraph (A), which applies here, is unknown. However, the omission is of no consequence because the relevant language of "debt for" is contained within paragraph (a)(1) and applies to both subparagraphs. Although paragraph (a)(14) uses the language "debt incurred to pay" as opposed to "debt for," we see no reason why Congress would want to treat a creditor under section 523(a)(14) any differently with respect to an award of attorney's fees, if available, than under section 523(a)(1).

*Cohen* is also not limited to cases involving statutorily-based attorney's fees; it applies equally to cases in which fees are provided for by contract. *See Redwood Theaters, Inc. v. Davison (In re Davison)*, 289 B.R. 716, 725 (9th Cir. BAP 2003) (implying that attorney's fees provided for payee in promissory note could have been awarded to creditor if he had been prevailing party in nondischargeability action).

Accordingly, we conclude that attorney's fees awarded in connection with a judgment under section 523(a)(14) would be nondischargeable. Likewise, the same is true for an award of costs. We now must determine whether Fry was entitled to recover attorney's fees outside of bankruptcy under Nevada law.

### 3. Nevada law.

■ In Nevada, a court may provide for an award of attorney's fees as a cost of

litigation under a fee shifting statute or agreement as opposed to an element of damage only if an agreement, statute or rule authorizes such an award. *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 124 P.3d 530, 547 (2005) (citing *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*, 117 Nev. 948, 35 P.3d 964 (2001) (per curiam), *receded from on different grounds by Horgan v. Felton*, 123 Nev. 577, 170 P.3d 982 (2007)). Nev. Rev. Stat §§ 18.010(1) and 18.010(4) authorize the award of attorney's fees to the prevailing party when provided for in a written agreement. Fry is entitled to all costs and expenses incurred, including reasonable attorney's fees to be determined by the court, if he is the prevailing party in a collection action on the note.

■ Here, Dinans admitted that the Loan proceeds were used to pay 940 and 941 employer payroll taxes to the IRS. They have also never disputed that these taxes would have been nondischargeable under section 523(a)(1) if not paid to the IRS prepetition. In addition, the bankruptcy court imposed a "tracing" requirement and determined that $17,068.01 was attributable to paying the taxes.[14] Therefore, Fry satisfied the elements for a nondischargeability claim under section 523(a)(14). *Barton*, 321 B.R. at 879; *Chrusz*, 196 B.R. at 224. However, Dinans' defense to Fry's claim was that no amount was nondischargeable because Fry failed to comply with Nevada law on the Notice of Sale, a defense which the bankruptcy court eventually rejected. Thus, in order for Fry to prevail on what was a suit for collection on the Promissory Note, the court had to determine that Fry's Notice

---

last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]

14. We make no determination on whether or not the bankruptcy court was correct to impose a "tracing" requirement.

of Sale was adequate under Nevada law, which it ultimately determined in the affirmative. Clearly, if Fry had pursued a collection suit in the Nevada state court, he would have been entitled to reasonable attorney's fees and costs.

The parties disputed whether Fry was the "prevailing party" per the terms of the Promissory Note. The bankruptcy court made no finding on this issue. We conclude that Fry is the "prevailing party" under Nevada law because he succeeded on a significant issue in the litigation which achieved some of the benefit he sought in bringing suit. *Valley Elec. Ass'n v. Overfield,* 121 Nev. 7, 106 P.3d 1198, 1200 (2005). In addition, his judgment was monetary in nature. *Id.*

Therefore, we conclude that under Nevada law Fry was entitled to reasonable attorney's fee and costs, which would also be nondischargeable along with the underlying debt of $17,068.01. *Cohen,* 523 U.S. at 223, 118 S.Ct. 1212.

**4. The attorney's fees award was not reasonable.**

In support of Fry's Motion for Attorney's Fees, he included Pope's time records reflecting an itemized list of tasks she or her paralegal undertook in Fry's case, as well as an affidavit from Pope to support the time records. We note that Pope has been practicing law for over 20 years,

and she charged Fry a rate of $140/hour, reduced from her usual rate of $250/hour. Fry argues on appeal that the bankruptcy court abused its discretion by awarding him only $2,000 in attorney's fees. In short, Fry contends that even though some of Pope's time was spent pursuing his section 727 claims, $2,000 does not begin to cover the fees necessarily expended to prove that under Nevada law he was entitled to have the debt determined nondischargeable in some portion.

▮ We review de novo the legal standard the bankruptcy court used to determine an award of attorney's fees. *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, 1147–48 (9th Cir.2001).

▮ The method for determining reasonable attorney's fees in Nevada is not limited to one specific approach, but its analysis must begin with a method [15] rationally designed to calculate a reasonable amount as tempered by reason and fairness. *Shuette,* 124 P.3d at 548–49. Such amount may be based on a lodestar method [16] as a starting point and then adjusted by considering the factors [17] enumerated in *Brunzell v. Golden Gate Nat'l Bank,* 85 Nev. 345, 455 P.2d 31, 33 (1969). *Id.* "[W]hichever method the court ultimately uses, the result will prove reasonable as long as the court provides sufficient reasoning and findings in support of its ulti-

15. In *Shuette,* the Nevada Supreme Court suggests at least two methods: lodestar and contingency fee. 124 P.3d at 549.

16. "The lodestar approach involves multiplying 'the number of hours reasonably spent on the case by a reasonable hourly rate.'" *Shuette,* 124 P.3d at 549 n. 98 (quoting *Herbst v. Humana Health Ins. of Nev., Inc.,* 105 Nev. 586, 781 P.2d 762, 764 (1989)).

17. The factors include: "'(1)the qualities of the advocate: his ability, his training, education, experience, professional standing and

skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.'" *Brunzell,* 455 P.2d at 33 (quoting *Schwartz v. Schwerin,* 85 Ariz. 242, 336 P.2d 144, 146 (1959)).

mate determination." *Id. See also Schouweiler v. Yancey Co.,* 101 Nev. 827, 712 P.2d 786, 790 (1985).

 We are mindful that the bankruptcy court has broad discretion in determining whether to award attorney's fees. However, the bankruptcy court failed to articulate what legal standard it applied in its decision to award Fry only $2,000 out of the $55,361.50 he requested. Besides the court's belief that most of Fry's fees were incurred in pursuing his section 727 claims, the court also based Fry's fee award on the fact that he recovered only 10% of the debt, i.e., $17,068.01 out of $165,000. Even if that was the proper standard under Nevada law for determining an attorney's fee award, which is not the case, the bankruptcy court erred in fact; Fry sought to have $107,001.32 deemed nondischargeable, not $165,000. The court then apparently took its 10% figure, applied it to the $17,068.01 recovered, and awarded Fry an attorney's fee of about 10% of the recovery, or $2,000.

In any event, the judgment contains no explanation as to what calculus the bankruptcy court used in setting Fry's fee award based on the $17,068.01 judgment. *Henry Prods. Inc. v. Tarmu,* 114 Nev. 1017, 967 P.2d 444, 446 (1998) (if a court without explanation reduces documented fees, the failure to state a basis for the reduced fees is arbitrary and an abuse of discretion). Nevada law prohibits such an approach. *See Schouweiler,* 712 P.2d at 790 (amount of the judgment is not relevant to a reasonable award of attorney's fees). Hence, the bankruptcy court applied an incorrect rule of law in its fee determination; it should have engaged in an analysis of the factors required under

Nevada law to determine a reasonable attorney's fee. As a result, the bankruptcy court abused its discretion. *Hinkson,* 585 F.3d at 1262.

Accordingly, we VACATE the bankruptcy court's award of attorney's fees and REMAND this issue for a reasonableness determination in compliance with Nevada law.[18]

**B. The Bankruptcy Court Did Not Abuse Its Discretion When It Awarded Fry $337 In Costs.**

Dinans agreed in the Promissory Note to pay all costs and expenses Fry incurred in a collection suit against them. In Fry's Bill of Costs, he requested $2,366.87 for filing fees, service of the summons and complaint, witness fees, deposition costs, and process server fees. He supported his request with receipts for the expenses and Pope's affidavit. On appeal, Fry contends that the bankruptcy court abused its discretion when it awarded him only $337 out the $2,366.87 he requested in costs.

 Rule 7054(b) provides that the court may allow costs to the prevailing party, except for certain reasons not relevant here. While the national rule uses the term "may," Local Bankruptcy Rule 7054–1, which has adopted in full LR 54–1 of the District Court for the District of Nevada, provides that the prevailing party "shall" be entitled to reasonable costs. Thus, an award of costs is mandatory.

 Here, the bankruptcy court awarded Fry only $337 in costs because it determined most of the expenses related to his failed section 727 claims. Again, the court did not articulate the legal standard it was applying. However, such error was

---

**18.** On remand, the bankruptcy court is free to consider all appropriate factors in determining how much of the fees Fry requested are reasonable. One factor to consider is that Fry stated in his reply brief, and Pope confirmed at oral argument, that approximately $34,000 is directly traceable to the nondischargeability claim.

harmless because Fry has not properly briefed this issue. While Fry presents the costs award as one of the issues on appeal, he provides no argument to support his assertion that the bankruptcy court abused its discretion in its costs award. Issues raised in a brief but not supported by argument are deemed abandoned. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988). Therefore, we will not consider the bankruptcy court's decision on Fry's costs award. Even if we did consider it, we could not conclude on this record that the court abused its discretion.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM the bankruptcy court's costs award of $337. However, we VACATE the $2,000 attorney's fee award and REMAND that issue to the bankruptcy court for further proceedings consistent with this opinion.