

**ORDERED PUBLISHED**
## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  NC-19-1178-TaFB |
| DAVID WILLIAM BARTENWERFER and KATE MARIE BARTENWERFER, | Bk. No. 3:13-bk-30827 |
| Debtors. | Adv. No. 3:13-ap-03185 |
| DAVID WILLIAM BARTENWERFER; KATE MARIE BARTENWERFER , | |
| Appellants, | |
| v. | OPINION |
| KIERAN BUCKLEY, | |
| Appellee. | |

Argued and Submitted on March 26, 2020

Filed – April 23, 2020

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

————

Appearances:      Iain A. Macdonald, Reno F.R. Fernandez III, and Matthew
                  J. Olson of Macdonald Fernandez LLP on brief for
                  appellants; Janet Marie Brayer argued on behalf of
                  appellee.

——————

Before: TAYLOR, FARIS, and BRAND, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

## INTRODUCTION

In earlier cross-appeals,[1] we reviewed a judgment in which the bankruptcy court: (1) determined that appellee Kieran Buckley's state court judgment and attorneys' fees award against appellants David and Kate Bartenwerfer ("Debtors") were excepted from Debtors' discharge under § 523(a)(2)(A);[2] (2) denied Mr. Buckley attorneys' fees incurred in his nondischargeability action; and (3) awarded Mr. Buckley interest at the California judgment rate of 10%. We affirmed the bankruptcy court in all but two respects. First, we vacated its judgment as against Mrs. Bartenwerfer and remanded for further findings regarding her intent

———

[1] *Bartenwerfer v. Buckley (In re Bartenwerfer)*, BAP Nos. NC-16-1277-BJuF, NC-16-1299-BJuF, 2017 WL 6553392 (9th Cir. BAP Dec. 22, 2017).

[2] Unless specified otherwise, chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

to defraud.[3] And second, as relevant to this appeal, we vacated its judgment and two related orders to the extent that it determined that Mr. Buckley's state court attorneys' fees were nondischargeable. The then-existing record was inadequate to assess which fees, if any, flowed from Mr. Bartenwerfer's nondischargeable fraudulent conduct. We therefore remanded the issue for further determination and with instructions to reopen the record.

On remand, the bankruptcy court did a searching analysis of the state court record and found that Mr. Buckley's state court fraud and non-fraud claims were inextricably intertwined, thus making fee apportionment impossible. It then entered judgment once again determining that his fees were wholly nondischargeable. Debtors appealed. We determine that the judgment is well-supported by the record developed on remand, and we AFFIRM.

## FACTS

### A. Prepetition Events

#### 1. The Sale of the Property

Prepetition, Debtors purchased a home in San Francisco, California ("Property"), which they remodeled and sold to Mr. Buckley. Before the sale, Debtors signed a Cal. Civ. Code § 1102 *et seq.* transfer disclosure

---

[3] On remand, the bankruptcy court entered judgment in Mrs. Bartenwerfer's favor after finding that she lacked the requisite fraudulent intent. The parties cross-appealed the judgment. *See* BAP Nos. NC-19-1016-TaFB and NC-19-1025-TaFB.

statement and a supplement thereto (collectively, the "TDS"), which contained false representations regarding, *inter alia,* water leaks, defective window conditions, open permit issues, and fire escape non-compliance ("Defects").

**2. The State Court Action**

Mr. Buckley discovered the Defects after the sale and sued the Debtors in state court. His complaint included eight claims: (1) strict liability; (2) breach of express warranty; (3) breach of implied warranty; (4) negligence; (5) breach of contract; (6) negligent misrepresentation; (7) fraud/deceit; and (8) rescission. The complaint also named various contractors as defendants in the negligence claim.

All of the claims relied on and incorporated the core factual allegations set forth in paragraphs nine through fourteen of the complaint. These paragraphs alleged that: Debtors engaged in the business of remodeling and selling residences to the general public (¶9); Debtors failed to construct the Property in accordance with proper and approved techniques and failed to hire and adequately manage capable contractors, subcontractors, and material suppliers (¶10); Debtors failed to perform work at the Property in compliance with California building code standards (¶11); Mr. Buckley discovered the Defects after the Property was transferred to him (¶12); the Property may have additional as yet undiscovered defects (¶13); and Debtors' remodeling, construction, and

4

sale of the Property in a defective condition damaged Mr. Buckley (¶14).

Debtors answered the complaint and cross-complained against Mr. Buckley and their contractors. Their answer included a general denial and affirmative defenses, including fault of a third party, indemnity by the contractors, and damages caused by another party, wear, or tear. Their cross-complaint asserted breach of contract claims against Mr. Buckley and the contractors and implied indemnity and contribution claims against the contractors.

In answering the complaint and cross-complaint, some contractors asserted affirmative defenses of indemnification and contributory or comparative negligence of the other parties to the action. At least one contractor also filed its own cross-complaint.

Extensive discovery and motion practice followed for three years. The parties did not parse discovery among Mr. Buckley's claims against Debtors and the contractors, and the nature of the indemnity claims resulted in a finger-pointing blame game relative to Mr. Bartenwerfer's defense that he lacked knowledge of, and responsibility for, the Defects.

After a 19-day trial, the jury found in Mr. Buckley's favor on his breach of contract, negligence, and failure to disclose information (denominated as the "Seller's Nondisclosure" claim in the verdict form) claims, but in Debtors' favor on his intentional and negligent misrepresentation claims. The jury found against Debtors on their breach of

5

contract claim. And the jury awarded Mr. Buckley $444,671 in damages, which the state court reduced in an amended judgment ("State Court Judgment") to $234,671, plus 10% interest, attorneys' fees, and costs, pursuant to a noticed motion. Mr. Buckley then filed a motion seeking attorneys' fees, but the Debtors filed their chapter 7 bankruptcy before the state court could hear it.

## B. Postpetition Events

### 1. The Nondischargeability Judgment

Mr. Buckley responded with an adversary complaint to except the State Court Judgment and his fees from Debtors' discharge. After trial, the bankruptcy court entered judgment excepting the entire State Court Judgment from discharge pursuant to § 523(a)(2)(A).

### 2. The Post-Trial Attorneys' Fees Proceedings

Mr. Buckley then moved for the attorneys' fees he incurred in the State Court Action, among other relief ("Fee Motion"). Debtors opposed. Initially, the bankruptcy court granted Mr. Buckley $378,491 in state court fees and costs, subject to a reasonableness determination.

Mr. Buckley contended his fees were reasonable given the modest hourly rate charged, a 19-day jury trial, and the five-year duration of the State Court Action. Debtors countered that 521 hours (*i.e.*, $182,566) of time was excessive because such time arose from the allegedly unrelated contractor litigation. They further objected to alleged block-billing and

6

billing for clerical and travel activities.

Eventually, the bankruptcy court reduced the fees to $348,483.53 to eliminate clerical and travel fees lumped in with substantive legal work. But it declined to further reduce the fees for time spent on allegedly unrelated matters because Debtors had failed to introduce the complaint into evidence and explain why such time was unrelated to the claims giving rise to the nondischargeable debt.

Thus, the bankruptcy court entered its final order on the Fee Motion and an amended § 523(a)(2)(A) judgment to award Mr. Buckley $348,483.53 of nondischargeable fees. It later entered a further amended judgment ("523 Judgment") to add relief not relevant to this appeal.

### 3. The Cross-Appeals

Both Mr. Buckley and Debtors appealed the fee award. We concluded that because the state court never liquidated Mr. Buckley's fees or determined their reasonableness, the bankruptcy court must determine what portion of the fees, if any, flowed from Mr. Bartenwerfer's fraudulent conduct. We noted that neither we nor the bankruptcy court could make that determination from the thin record. Accordingly, we vacated the bankruptcy court's fee orders and 523 Judgment and directed it to reopen the record to make that determination.

### 4. The Remand Proceedings

On remand, the parties agreed that Mr. Buckley bears the initial

burden of establishing that his fees are traceable to his nondischargeable claim, and thereafter the burden shifts to Debtors to identify or explain the extent to which those fees are not attributable to Mr. Bartenwerfer's fraud. To determine the fee issue, the bankruptcy court authorized the parties to brief the apportionment issue and Debtors to depose and review the time sheets of Mr. Buckley's counsel, Janet Brayer.

Citing Ms. Brayer's testimony and the state court docket report, Mr. Buckley argued that his state court claims were both factually and legally intertwined, making fee apportionment impossible. The bankruptcy court found that he met his initial burden of tracing his fees to his nondischargeable claim and that the burden shifted to Debtors.

Debtors argued that the bankruptcy court should deny the fees because Mr. Buckley failed to trace the fees to the claim upon which his § 523(a)(2)(A) claim is premised—the nondisclosure claim. But Debtors failed to specify any particular time entry or category that was not traceable to Mr. Bartenwerfer's fraud. And while they annexed copies of the complaint and jury instructions for the bankruptcy court's consideration, they failed to analyze such documents.

Mr. Buckley argued that Debtors failed to meet their burden to provide the bankruptcy court with specific reasons for disallowing fees. And he again argued that his state court claims against Debtors were interrelated and premised on the same set of operative facts, pointing to

8

specific examples in the jury instructions. He argued that time spent litigating with the contractors was also traceable to his nondisclosure claim as it related to Debtors' attempts to shift liability for the Defects.

The bankruptcy court agreed with Mr. Buckley and entered judgment awarding him $348,483.53 of nondischargeable fees, plus interest at a rate of 10% from entry of the State Court Judgment forward. Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in determining that all of Mr. Buckley state court attorneys' fees were nondischargeable on remand?

## STANDARDS OF REVIEW

We review the bankruptcy court's award of attorneys' fees for an abuse of discretion or erroneous application of the law. *Dinan v. Fry (In re Dinan)*, 448 B.R. 775, 783 (9th Cir. BAP 2011). The bankruptcy court abuses its discretion if it applies the wrong legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

To the extent the issue is whether California law allows the award of attorneys' fees, our review is de novo. *See In re Dinan*, 448 B.R. at 783.

9

We may affirm on any basis supported by the record. *Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008).

## DISCUSSION

**A. The bankruptcy court applied the correct legal standard regarding apportionment of fees.**

Debtors acknowledge that § 523(a)(2)(A) excepts from discharge attorneys' fees that are traceable to fraud. *See Cohen v. De La Cruz*, 523 U.S. 213, 218-19 & 223 (1998). But they contend that the bankruptcy court erred by not requiring Mr. Buckley to apportion his attorneys' fees between those attributable to his nondischargeable fraud claim and those that are not.

While it is true that as the prevailing party Mr. Buckley bore the burden of establishing that the fees stemmed from the nondischargeable fraud liability, *see Plikaytis v. Roth (In re Roth)*, 662 F. App'x 540, 544 (9th Cir. 2016), fee apportionment is not required if the issues in the various claims are "so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units," *Harman v. City & Cty. of S.F.*, 158 Cal. App. 4th 407, 417 (2007) (citation and internal quotation marks omitted). Whether compensable and noncompensable claims are inextricably intertwined to excuse apportionment is a factual question. *See id.* at 424.

Mr. Buckley argued, and the bankruptcy court agreed, that his state court claims were premised on a common core of facts and, thus, were

10

inextricably intertwined, excusing the apportionment of fees. We find sufficient support in the record for the bankruptcy court's finding.

Specifically, the State Court Action and the adversary proceeding focused on the issue of Debtors' nondisclosure of material facts relating to the Defects to induce Mr. Buckley to buy the Property. The complaint's eight claims all incorporated the same core operative facts. And the jury instructions reflected the interrelatedness of the claims. For example, damages for each claim required similar analyses of the costs to repair the Property and the differential value of the Property as represented versus its actual condition. Further, both the jury instructions and verdict form instructed the jury that, if it found in Mr. Buckley's favor on multiple claims, it could only award damages once. This indicates that the same set of core facts connected all claims. And resolution of Debtors' cross-complaint and the contractors' cross-claims similarly centered on whether Mr. Bartenwerfer or the contractors were responsible for, and knowledgeable of, the Defects.

While the nondisclosure claim is premised on only four of twelve alleged defects in the complaint, Debtors were required to disclose all twelve defects in the TDS, to the extent the defects existed. And while the claims and scope of damages narrowed through the course of litigation, a significant overlap of facts and issues between the claims in the State Court Action and the adversary proceeding existed in all other respects. The

11

bankruptcy court painstakingly articulated the overlapping factual predicates and issues in the claims asserted by and among Mr. Buckley, Debtors, and the contractors to conclude that Mr. Buckley need not apportion his fees. We discern no error in its factually supported and thoroughly reasoned conclusion.

**B. Debtors failed to make specific objections to fees.**

As Mr. Buckley established that fee apportionment was unnecessary, Debtors were required to object to specific time entries to obtain a reduction or disallowance of fees. *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012). This entailed "specifically identify[ing] defects or deficiencies in the hours requested. Conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees." *Id.*; s*ee also Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) ("If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut."); *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008) (holding that objecting party bears the burden of specifying items challenged with sufficient evidence and argument and "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice"). They failed to do so.

They did not make sufficiently specific objections to Ms. Brayer's

time entries. Rather, they objected to the fee request on the basis that the time entries contained block-billing. While block-billing may result in reductions for specific entries, it does not require disallowance of all fees. *See Garcia v. Resurgent Capital Servs., L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012) (citing *Fischer v. SJP–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) and *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1216–17 (E.D. Cal. 2009); *cf. Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (holding that the use of block-billing does not justify an across-the-board reduction or rejection of all hours). A party objecting to fees on the basis of block-billing should specifically identify problematic entries. But here, Debtors simply requested that the bankruptcy court exercise its general discretion to disallow broad categories of block-billed time. The bankruptcy court appropriately denied the request.

It likewise appropriately overruled Debtors' objection to broad categories of fees that were allegedly extraneous to the nondisclosure claim because Debtors failed to provide specific reasons why these categories were objectionable. They declined to meaningfully analyze the state court pleadings and jury instructions to aid the bankruptcy court in determining what portion of the fees, if any, flowed from Mr. Bartenwerfer's fraudulent conduct. Without their input, the bankruptcy court determined that the

13

pleadings and instructions revealed that the claims, cross-claims, and affirmative defenses between the parties—including claims by and against the contractors—were wholly intertwined. This was not an abuse of discretion.

Among other generalized complaints, Debtors took issue with fees incurred to address an interpleader action. But these fees sufficiently related to Mr. Buckley's nondisclosure claim given that they were incurred to combat Debtors' assertion that Mr. Buckley had waived and released his claims by accepting interpled funds. Debtors also asserted a blanket objection to a hodgepodge of time related to mediation, experts, and research on claims without highlighting specific entries and without providing clear argument for disallowing such fees. Again, the bankruptcy court did not abuse its discretion in awarding these fees in light of Debtors' failure to meet their burden to show that any particular category of fees should be reduced or disallowed. *See Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 764-65 (9th Cir. 2015).

Neither did it abuse its discretion in allowing fees incurred in responding to a motion *in limine* brought by one of Debtors' subcontractors concerning prior litigation. While Debtors cited to specific objectionable time entries in that regard, the bankruptcy court found that the time related to Mr. Bartenwerfer's potential liability for negligently hiring and supervising contractors, some of whom were allegedly involved in the

14

undisclosed permitting issues.

Debtors also urge that fees incurred in discovery relating to defects not specifically included in the nondisclosure claim should be disallowed. But the complaint indicated that Mr. Buckley's claims cover undiscovered defects. Any defects unknown to Mr. Buckley should have been disclosed by Debtors in the TDS. Accordingly, fees incurred in such discovery related to Mr. Buckley's fraud claim. Again, the bankruptcy court appropriately overruled Debtors' objection to such fees.

It also did not abuse its discretion by overruling Debtors' objections to fees incurred regarding: (1) the exploration of Mr. Bartenwerfer's status as a contractor; and (2) lay opinion concerning contract interpretation. Such fees related to Mr. Bartenwerfer's knowledge and awareness of the condition of the Property and his understanding of his obligations under the sale contract, which incorporated the TDS.

## CONCLUSION

The bankruptcy court properly excused fee apportionment and found that Debtors failed to identify or explain why Mr. Buckley's fees were unrelated to his nondischargeable fraud claim. It also properly overruled other inadequately or wholly unsupported objections to the fee request. We AFFIRM.

15