EVERETT S. M. BRUNZELL, APPELLANT, v. GOLDEN GATE NATIONAL BANK, A NATIONAL BANKING INSTITUTION, RESPONDENT.

No. 5716

May 28, 1969                    455 P.2d 31

*Goldwater, Taber, Hill & Mortimer* and *Robert E. Rose* and *Michael Melner,* of Reno, for Appellant.

*Bradley & Drendel,* of Reno, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Appellant Everett S. M. Brunzell signed on January 14, 1964, a "Continuing Guaranty" with Respondent Golden Gate National Bank ("Bank"), agreeing to pay any and all indebtedness, not to exceed $50,000, of First Capital Corporation ("Capital"). The agreement provided that the "guaranty shall not apply to any indebtedness created after actual receipt by

Bank of written notice of its revocation as to future transactions." Appellant claims that such a written notice of revocation was given to Bank in letter form dated October 15, 1965,[1] but that thereafter, on April 1, 1966, Capital executed a note for $40,000 payable to Bank in exchange for Bank's canceling two $20,000 notes which were due in August 1965 (prior to the time that Bank received Capital's letter of October 15, 1965). The only payment received on the $40,000 note of April 1, 1966, was $700. Bank sued Brunzell as a guarantor for the balance of $39,300 plus interest, costs, and attorneys' fees. After both sides presented their evidence before the jury, respondent moved for a directed verdict pursuant to the provisions of NRCP 50(a). The trial judge granted the motion and ordered that Bank have judgment against Brunzell for

---

[1]FIRST CAPITAL CORPORATION
First Capital Building
130 Bush Street
San Francisco, California 94104
981–8730 Area 415
Cable: FIRSTCAPCO

October 15, 1965

This letter is to formally announce the disassociation of Brunzell, Jackson and Prichard in the following companies, ventures and properties:

First Capital Corporation
Jack London Inn, Inc.
Miller Place Associates
Riverside Associates, Inc.
Del Mar Properties
Van Ness Associates, Inc.
First Capital Investment Corporation
Capital Oil Company

The undersigned Frank J. Jackson, Jr. became the controlling owner as of October 11, 1965, by the acquisition of the interests of Gaylord E. Prichard and Everett S. M. Brunzell, and assumption of all liabilities.

As Messrs. Brunzell and Prichard are no longer associated in any way with these entities, any questions you may have concerning them should be addressed to

Frank J. Jackson, Jr.
% First Capital Corporation
130 Bush Street
San Francisco, California 94104

Very truly yours,

FIRST CAPITAL CORPORATION
[illegible signature]
Frank J. Jackson, Jr.

FJJ:dw

$39,300 plus interest, costs, and attorneys' fees in the sum of $5,000.

Appellant has asserted two assignments of error: first, that as a matter of law his continuing guaranty to pay the indebtedness of Capital terminated when Bank received the letter of October 15, 1965, and that therefore he is not liable on the $40,000 note executed by Capital on April 1, 1966; and second, that the district court abused its discretion in awarding Bank $5,000 in attorneys' fees. We find both assignments without merit, and we affirm the judgment of the district court.

1.   The letter of Capital dated October 15, 1965, was not legally sufficient to terminate Brunzell's continuing guaranty to Bank. It is nothing more than a statement that Brunzell was no longer associated with Capital and that his interest had been acquired by Frank J. Jackson, Jr., who signed the letter on behalf of Capital. A revocation of a continuing guaranty must be executed by the guarantor who seeks to effect its revocation. Otherwise it affects only the person who gave the notice. D. N. & E. Walter & Co. v. Van Domelen, 425 P.2d 166 (Ore. 1967). Further, a notice of revocation must be clear in its terms, and positive. Haynie v. First Nat'l Bank, 162 S.E.2d 27 (Ga.App. 1968). In Haynie, the court said, at 30: "In accord with this principle it was held that a notice to the creditor that an individual guarantor had severed his connections with the corporation whose obligations were the subject matter of the guaranty did not serve as a notice of revocation of his guaranty, since *the guaranty was not conditioned upon his status as an officer or stockholder of the corporation.* Manufacturers' Finance Co. v. Rockwell, 278 Mass. 502, 180 N.E. 224.

". . . .

"There was no written notice from Haynie to the bank of his termination or revocation of the guaranty; only a notice from the corporation that he had terminated his connection with it and that his authority to sign for the corporation had terminated. Thus, he could no longer sign checks drawn on its account, nor could he sign notes as a corporate officer to find [sic] the corporation, but nothing terminated his right to sign for himself as guarantor of the corporate obligations, his status as a guarantor or his continuing liability under the contract." (Emphasis by court.)

Finally, Brunzell urges that when Bank canceled the two $20,000 notes in exchange for the one $40,000 note, he was relieved of liability as guarantor because he was not given notice of the cancellation and of the issuance of the new notice. We find this contention equally meritless. The Continuing Guaranty which Brunzell signed provides: "Guarantors waive all presentments, demands for performance, notices of non-performance, protests, notices of protest, notices of dishonor, and notices of acceptance of this guaranty and of the existence, creation, or incurring of new or additional indebtedness."

2. We turn to consider appellant's other assignment of error—that the district judge abused his discretion in allowing respondent counsel fees in the sum of $5,000. Counsel for the respondent took the witness stand and testified regarding the nature and extent of the services he performed. During cross-examination, respondent's counsel admitted that he had not kept an hourly schedule of time expended. Appellant urges that in the absence of such a schedule the trial judge was unable to justify the $5,000 award for counsel fees made to respondent in the case. We do not agree. While hourly time schedules are helpful in establishing the value of counsel services, other factors may be equally significant. As the Arizona court said in Schwartz v. Schwerin, 336 P.2d 144, 146 (Ariz. 1959):

"Before discussing the separate counts, it seems advisable that we state the well-known basic elements to be considered in determining the reasonable value of an attorney's services. From a study of the authorities it would appear such factors may be classified under four general headings (1) *the qualities of the advocate:* his ability, his training, education, experience, professional standing and skill; (2) *the character of the work to be done:* its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) *the work actually performed by the lawyer:* the skill, time and attention given to the work; (4) *the result:* whether the attorney was successful and what benefits were derived. See, 7 C.J.S. Attorney and Client, § 191 a. (2), p. 1080 et seq.; 5 Am.Jur., Attorneys at Law, section 198. Cf. Ives v. Lessing, 19 Ariz. 208, 168 P. 506. Furthermore, good judgment would dictate that each of these factors be

given consideration by the trier of fact and that no one element should predominate or be given undue weight." (Emphasis by court.)

We will not substitute our opinion for that of the trial court unless as a matter of law there has been an abuse of discretion. The value to be placed on the services rendered by counsel lies in the exercise of sound discretion by the trier of the facts. DeSylva v. Ballentine, 215 P.2d 780 (Cal.App. 1950). As this court said in Sarman v. Goldwater, Taber & Hill, 80 Nev. 536, 542, 396 P.2d 847, 850 (1964), in sustaining a fee allowance of $65,790: "Their [counsel's] legal responsibility is shown to have been competently discharged, and their work skillfully performed. The lower court did not abuse its discretion in its determination of the reasonable value of their services."

The judgment is affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.