**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| **COKER EQUIPMENT CO., INC.,** | No. 08-16359 |
| Plaintiff - Appellant, | D.C. No. 2:06-CV-00516-RCJ-RJJ |
| v. | |
| **BERNIE WITTIG; et al.,** | **MEMORANDUM** * |
| Defendants - Appellees. | |

| | |
|---|---|
| **COKER EQUIPMENT CO., INC.,** | No. 08-16362 |
| Plaintiff - Appellee, | D.C. No. 2:06-CV-00516-RCJ-RJJ |
| v. | |
| **CITIWEST STRUCTURES (CALIFORNIA), INC.,** | |
| Defendant - Appellant, | |
| and | |
| **BERNIE WITTIG; et al.,** | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

Defendants.

Appeal from the United States District Court
for the District of Nevada
Robert C. Jones, District Judge, Presiding
Argued and Submitted December 9, 2009
San Francisco, California

Before: SCHROEDER and CALLAHAN, Circuit Judges, and LYNN, [**] District Judge.

Coker Equipment Co., Inc. appeals the district court's judgment, following partial summary judgment and a bench trial in favor of Citiwest Structures (California), Inc. Citiwest cross-appeals on the amount of its attorney fees and costs awarded. This court has jurisdiction under 28 U.S.C. § 1291. We affirm in part, and reverse and remand in part for further proceedings.

I.

The district court did not err by granting Citiwest summary judgment on Coker's breach of contract claim. We review the district court's grant of summary judgment *de novo*. *See Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 563

---

[**] The Honorable Barbara M.G. Lynn, U.S. District Judge for the Northern District of Texas, sitting by designation.

2

F.3d 777, 783 (9th Cir. 2009).

Coker leased a crane to Citiwest, with an option to purchase, for use on the Pinnacle Museum Tower project. At issue is whether the district court correctly interpreted the contract as providing for specified crane usage over the life of the lease term, rather than per month, and whether Citiwest exceeded its allotted usage. Coker contends that the contract unambiguously limits Citiwest's basic usage to 250 hours monthly.

It is reasonable to interpret the contract to mean that 250 hours per month is the basis for the rental rate, not a monthly limit. *See Caldwell v. Consol. Realty & Mgmt. Co.*, 668 P.2d 284, 287 (Nev. 1983) (requiring the Court to seek a reasonable interpretation for an ambiguous contract). Because there is more than one reasonable interpretation of the contract, the contract is ambiguous, and the district court properly considered parol evidence. *See Glenbrook Homeowners v. Glenbrook Co.*, 901 P.2d 132, 137 (Nev. 1995). Ambiguity is construed against the drafter, Coker. *See Williams v. Waldman*, 836 P.2d 614, 619 (Nev. 1992). The contract did not provide for objectively timing crane usage. Coker did not provide a meter to track monthly usage and there was evidence that Coker represented to Citiwest that usage hours would be considered in the aggregate. Parol evidence supports Citiwest's interpretation, and we agree with the district court's

interpretation that the contract provided Citiwest with 4,875 hours of usage aggregated over the 19.5 months it leased the crane.

Citiwest did not exceed its 4,875 hours of allotted crane usage. The operator logs show 4,420 hours of usage. Once the payroll logs are corrected to exclude the time when the operator was at work but not using the crane, they show 4,305 hours of use. Because Citiwest did not exceed its allotted usage, the district court correctly granted Citiwest's motion for summary judgment.

## II.

The district court correctly found after a bench trial that Coker breached the contract, because Citiwest had reasonable grounds for insecurity and Coker failed to provide to Citiwest an adequate assurance of due performance. We review for clear error the district court's factual findings in a bench trial. *See Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 384 (9th Cir. 1994).

In August 2004, Citiwest notified Coker that it intended to exercise the option and pay Coker $109,924.76 to purchase the crane in September 2004. Citiwest became insecure as to whether the crane was encumbered and sought adequate assurance from Coker. *See* Nev. Rev. Stat. §§ 104.2312, 104.2609. Coker argues that Citiwest did not have a reasonable basis for insecurity, since Coker provided Citiwest with a UCC-1 filing from G.E. Capital, showing that its

4

security interest in the crane had been released.  The district court did not commit clear error in finding that Citiwest was reasonably insecure, despite the release, based on events that occurred during the parties' relationship.  The crane was not Cal/OSHA certified when delivered to the job site and was consequently inoperable for three weeks.[1]  Further, Coker breached its contractual obligation to provide monthly maintenance on the crane.  In January 2004, the crane's hoist motor, the motor by which items are raised and lowered, seized up and ceased functioning.  In May 2004, the swing motor, which powers the turning of the crane, ceased functioning.  Although Citiwest had completed many projects requiring tower cranes, it had never had a hoist or swing motor blow on any other crane during a lease.  Viewing Coker's repeated delinquencies as cumulative, the district court correctly determined that Citiwest had reasonable grounds for insecurity.  *See* Nev. Rev. Stat. § 104.2609, Comment 4.

Coker breached the contract by failing to provide an adequate assurance of due performance.  Citiwest requested that Coker provide it with the paperwork needed to transfer title, including title documents and a bill of sale.  Coker never provided a bill of sale and never informed Citiwest that title documents do not normally accompany the sale of cranes.  Citiwest's counsel discovered several

---

[2] Cal/OSHA is the state of California's occupational safety and health plan.

5

UCC filings listing Coker as the debtor, as well as a California tax lien filed against Coker, which Citiwest reasonably believed encumbered the crane. Coker asserts on appeal that the UCC filings and tax lien did not encumber the crane, but did not communicate that position to Citiwest before the expiration of the option. Citiwest had reason for concern, because it understood a California tax lien to encumber "all personal and real property in the county" and believed that its knowledge of UCC filings against Coker would prevent Citiwest from being a buyer in the ordinary course of business. *See* Cal. Rev. & Tax. Code § 2191.4; Cal Com. Code § 9320, Comment 3. Even if Citiwest's belief that the crane was encumbered was incorrect (which is unclear), it was not unreasonable, arbitrary, or capricious. The district court did not err by finding that Citiwest had reasonable grounds for insecurity and that Coker breached the contract by failing to provide an adequate assurance of due performance.

## III.

The district court correctly determined that Coker abused process and was liable for punitive damages. Under Nevada law, the two elements of abuse of process are "(1) an ulterior purpose by the defendant[] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).

6

After the expiration of the option, Coker began billing Citiwest for "double shifting" of the crane, asserting that Citiwest had been using the crane for sixteen hours per day. Coker admitted at trial that it had no proof of double shifting and that it billed Citiwest those amounts "[o]ut of frustration." When Citiwest refused to pay the double shifting bills, Coker recorded a lien on the Pinnacle project. At trial, Coker acknowledged it had a prior judgment against it for filing an inappropriate lien. Further, Coker sued Citiwest's president and a crane operator personally, though neither was a signatory to the contract. The above facts amply support the district court's finding that Coker abused process. Because there was substantial evidence of oppression, fraud, or malice, the district court properly awarded punitive damages. *See Bongiovi v. Sullivan*, 138 P.3d 433, 450 (Nev. 2006).

Coker argues that the district court violated its due process rights by awarding punitive damages when it did not award compensatory damages for abuse of process, but instead awarded only attorney fees and costs. There was no due process violation because attorney fees and costs can constitute compensatory damages for abuse of process. *See Horgan v. Felton*, 170 P.3d 982, 989 (Nev. 2007) (Maupin, C.J. concurring); *see also Sternberg v. Johnson*, 582 F.3d 1114, 1122 (9th Cir. 2009) (recognizing that attorney fees can be damages in abuse of

7

process suits).  Because the district court awarded $50,000 in attorney fees and $5,000 in costs as compensatory damages, and $20,000 in punitive damages, the ratio of punitive damages to compensatory damages was not excessive.  *See generally Bongiovi*, 138 P.3d at 451-52.  Moreover, the district court satisfied Nev. Rev. Stat. § 42.005(3) by providing a separate hearing before awarding punitive damages.

IV.

Citiwest's cross-appeal asserts that the district court abused its discretion by awarding it $50,000 in attorney fees and $5,000 in costs, rather than its requested fees of $91,692 and costs of $6,079.32.  Under Nevada law, a lower court has great discretion in awarding fees, to be "tempered only by reason and fairness."  *Albios v. Horizon Communities, Inc.*, 132 P.3d 1022, 1034 (Nev. 2006).  However, the trial court must conduct its analysis in light of the factors identified in *Brunzell v. Golden Gate National Bank*, 455 P.2d 31, 33 (Nev. 1969), namely the "advocate's professional qualities, the nature of the litigation, the work performed, and the result."  *Albios*, 132 P.3d at 1034.  We review the district court's award for abuse of discretion.  *Id.*

The district court found in its May 14, 2008 order that Citiwest was entitled to reasonable attorney fees and costs, but found that Citiwest "has already been

8

made substantially whole by the grant of summary judgment against Coker, the findings at trial in favor of Citiwest, and the award of $20,000 in punitive damages." The court ruled that "an award of $50,000.00 in attorney fees and $5,000.00 in costs to Citiwest for its claims of $91,692.00 in attorney fees and $6,079.32 in costs is reasonable." The district court seemingly held Citiwest's victory against it when it reduced its fees and costs, without referencing the *Brunzell* factors. *Brunzell* requires the district court to consider Citiwest's "total win" in awarding its fees, not as a basis for reducing them. The district court's award of attorney fees is reversed and remanded for reconsideration of fees in light of the *Brunzell* factors.

Under Nev. Rev. Stat. § 18.020, the prevailing party in an action alleging more than $2,500.00 in damages is entitled to recover all costs as a matter of right. "[T]he determination of which expenses are allowable as costs is within the sound discretion of the trial court." *Albios*, 132 P.3d at 1037. However, because the district court did not consider whether certain costs were allowable, but rather reduced costs seemingly indiscriminately in light of Citiwest's prevailing overall, the district court's award of costs is reversed and remanded for reconsideration and explanation of why particular costs sought are not awarded. Each party shall bear its own costs on appeal.

9

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**