DALE E. HALEY, ESQ.; CHRISTOPHER G. GELLNER, P.C.; AND CHRISTOPHER G. GELLNER, ESQ., PETITIONERS, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE MICHAEL VILLANI, DISTRICT JUDGE, RESPONDENTS, AND JOEL D. OREVILLO, M.D.; AND STEWART PULMONARY ASSOCIATES, LTD., DBA PULMONARY ASSOCIATES, REAL PARTIES IN INTEREST.

No. 57437

April 5, 2012                                273 P.3d 855

*Christopher G. Gellner, P.C.*, and *Christopher G. Gellner*, Las Vegas; *Dale E. Haley*, Las Vegas, for Petitioners.

*Catherine Cortez Masto*, Attorney General, and *Robert J. Simon*, Deputy Attorney General, Carson City, for Respondents.

*Mandelbaum, Ellerton & McBride* and *Kim I. Mandelbaum*, Las Vegas, for Real Parties in Interest.

Before DOUGLAS, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this opinion, we address the scope of a district court's authority to unilaterally modify a settlement agreement under NRS 41.200, Nevada's statute governing the compromise of a minor's claim.

Because NRS 41.200 leaves the allocation of fees and costs to the district court's discretion, we conclude that the district court may adjust the terms of the settlement in accordance with the minor's best interest. As such, we deny in part this writ petition. However, because the district court in this case provided no explanation for the allocation of fees between the attorney and the guardian ad litem, we grant in part this writ petition.

### FACTS AND PROCEDURAL HISTORY

In June 2005, Warren West's pregnant wife underwent an emergency delivery procedure at the University Medical Center of

Southern Nevada (UMC). West's wife died during the procedure, and their baby girl was born with severe brain damage due to oxygen deprivation.

Unable to care for the baby's medical needs, West relinquished her for adoption and she became a ward of the state. Nonetheless, West retained petitioner attorney Christopher Gellner to bring a wrongful death and personal injury claim on the baby's behalf against real parties in interest Dr. Joel Orevillo and Stewart Pulmonary Associates, Ltd. (SPA).[1] While litigation was ongoing, the baby was adopted and named Ashley, and petitioner Dale Haley was appointed as her guardian ad litem.

In July 2010, the parties reached a $238,000 settlement before going to trial. Of this amount, Gellner sought to allocate $109,187.26 to himself ($61,000 in fees and $48,187.26 in costs), $20,100 to Haley as guardian ad litem, $79,333.33 to Medicaid, and the remaining $29,379.41 for Ashley. Pursuant to statute, Gellner submitted the proposed compromise to the district court for approval.

The district court refused to approve the compromise because the attorney fees and costs exceeded the amount payable to the minor, and further directed a reduction in either the attorney fees or the Medicaid lien before resubmission. Instead of reworking the numbers, Gellner filed another motion to approve the compromise, arguing that the circumstances of this case justified the original disposition of proceeds. At the district court's request, Haley submitted a statement of his hours as guardian ad litem.

Upon receipt of this information, the district court approved the overall settlement of $238,000 and ordered payment of $79,333.33 to Medicaid. The district court refused, however, to approve the remaining disbursement and ordered Gellner to submit a copy of his retainer agreement. After review of Gellner's contingency fee, which provided for a 40% recovery after out-of-pocket expenses, the district court issued a final order for the remaining distribution, allotting $95,200 to be placed in a blocked financial investment for Ashley's benefit and $63,466.67 as fees and costs to Gellner and Haley, combined in the distribution as attorneys.

Petitioners Gellner and Haley now assert that the district court lacked the statutory authority to unilaterally alter the distribution, and even if it had such authority, they argue that the district court abused its discretion in making the alteration it did. Petitioners seek this court's intervention by way of extraordinary writ.

---

[1]Gellner also filed wrongful death suits on behalf of West and his three other children against multiple UMC-affiliated defendants, but the parties reached a settlement. Subsequently, the claims of West and his other children against Dr. Orevillo and SPA (who are unaffiliated with UMC) were dismissed as time-barred. The baby's claims for wrongful death and personal injury against Dr. Orevillo and SPA were preserved under NRS 41A.097(4)(a)'s exception for minors with brain damage.

## DISCUSSION

Writ relief is an extraordinary remedy, and therefore, the decision to entertain a writ petition lies within our discretion. *Cheung v. Dist. Ct.*, 121 Nev. 867, 869, 124 P.3d 550, 552 (2005). "A writ of prohibition 'serves to stop a district court from carrying on its judicial functions when it is acting outside its jurisdiction.'" *Stephens Media v. Dist. Ct.*, 125 Nev. 849, 857, 221 P.3d 1240, 1246 (2009) (quoting *Sonia F. v. Dist. Ct.*, 125 Nev. 495, 498, 215 P.3d 705, 707 (2009)); NRS 34.320. "'A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion.'" *Williams v. Dist. Ct.*, 127 Nev. 518, 524, 262 P.3d 360, 364 (2011) (quoting *International Game Tech. v. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008)); NRS 34.160. "Mandamus will not lie to control discretionary action, unless discretion is manifestly abused or is exercised arbitrarily or capriciously." *Round Hill Gen. Imp. Dist. v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981) (internal citation omitted). A writ will not issue if the "'petitioner has a plain, speedy, and adequate remedy in the ordinary course of law.'" *Williams*, 127 Nev. at 524, 262 P.3d at 364 (quoting *Mineral County v. State, Dep't of Conserv.*, 117 Nev. 235, 243, 20 P.3d 800, 805 (2001)); NRS 34.170; NRS 34.330.

As is relevant here, we have consistently held that the right to appeal is generally an adequate legal remedy precluding writ relief. *Pan v. Dist. Ct.*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004). No right of appeal lies from the underlying order because neither Gellner nor Haley is an aggrieved party. NRAP 3A(a) (providing that only an aggrieved party may appeal from an adverse decision); *Albert D. Massi, Ltd. v. Bellmyre*, 111 Nev. 1520, 1521, 908 P.2d 705, 706 (1995) (stating that "an attorney representing a client in a case is not a party to the action and does not have standing to appeal"); *In re Christina B.*, 23 Cal. Rptr. 2d 918, 926 (Ct. App. 1993) (noting that by definition, "[a] guardian ad litem is not a party to the action, but merely a party's representative"). Further, we have stated that our consideration of a petition for extraordinary relief may be justified to clarify an important issue of law and when public policy is served by the invocation of our original jurisdiction. *Stephens Media*, 125 Nev. at 857, 221 P.3d at 1246.

Because petitioners have no adequate remedy at law, and because this petition presents an issue of first impression, we exercise our discretion to consider the merits of this writ petition. We conclude that mandamus relief is appropriate, in part, and deny the petition to the extent it requests a writ of prohibition.

To begin, we address whether a district court has authority under NRS 41.200 to unilaterally alter the distribution of settlement proceeds in approving the compromise of a minor's claim. After concluding that such authority exists, we then discuss the redistribution of Ashley's compromise.

## I. *NRS 41.200 authorizes the district court to redistribute proceeds of a settlement agreement in the minor's best interest*

NRS 41.200 sets out the procedure for compromising the claims of a minor. Subsection 1 of the statute provides that when a minor has a claim for money against a third person, either of the minor's parents or a guardian ad litem has the right to compromise the claim. NRS 41.200(1). A compromise is not effective until approved by the district court upon a verified petition in writing. *Id.* At issue here is whether the district court had authority to approve the compromise of a minor's claim by directing a distribution of the settlement proceeds different from that provided for in the petition for approval.

Petitioners contend that resolution of this matter necessitates our interpretation of NRS 41.200(4), suggesting that this provision merely affords the district court narrow authority to approve a compromise in its entirety and to then determine where the money will be paid on behalf of the minor, as opposed to determining the amount the minor will receive.

We disagree with petitioners' position, as such an interpretation directly contradicts the broad authority granted to the district court under NRS 41.200(1) to approve the proposed compromise of a minor's claim. This approval process expressly encompasses a review of the proposed apportionment of proceeds, including the amount to be used for attorney fees and other expenses. *See* NRS 41.200(2)(f) (providing that the petition must include the proposed allocation of attorney fees and other expenses). This conclusion is also consistent with the general authority set forth in NRCP 17(c), which allows the district court to issue any "order as it deems proper for the protection" of a minor.[2]

---

[2]In other contexts involving minors, we have established as a matter of public policy that the "best interests of the child" are of primary weight and concern. For instance, in *Fernandez v. Fernandez*, 126 Nev. 28, 34-37, 222 P.3d 1031, 1035-37 (2010), we affirmed the district court's decision to modify a child support order, taking into account the best interests of the child, notwithstanding the parties' settlement agreement to the contrary. Also, we have previously incorporated the best interests of the child as a factor in the child's placement outside the home, even though the statute did not speak to the issue. *Clark County Dist. Att'y v. Dist. Ct.*, 123 Nev. 337, 346, 167 P.3d 922, 928 (2007) (directing that a child's best interests should be the central focus in determining placement with someone other than a parent, despite the fact that the relevant statute does not expressly provide for such).

We note that NRCP 17(c) is nearly identical to its federal counterpart, FRCP 17(c), which has been interpreted as charging the court with a "special duty . . . to safeguard the interests of litigants who are minors." *See Robidoux v. Rosengren*, 638 F.3d 1177, 1181-82 (9th Cir. 2011) (instructing the district court to evaluate whether the net recovery of the minor is fair and reasonable in terms of the minor's claims and recovery in similar cases); *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem" (citations omitted)). "Integral to this protective judicial role is ascertaining whether attorney fee agreements involving minors . . . are reasonable." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243 (4th Cir. 2010). In *Abrams*, the Fourth Circuit reviewed a district court's decision to reduce attorney fees in approving the compromise of an incompetent party. *Id.* at 240. The court concluded that, regardless of the local rules, a district court has discretion to review attorney fees for reasonableness, so long as it adequately considers the requisite factors. *Id.* at 244 (setting forth 12 factors as guidance for the district court).

Taking into account Nevada's preference to consider a minor's best interest, an approach that is also supported by federal law, we conclude that NRS 41.200 allows the district court to assess the reasonableness of a petition to approve the compromise of a minor's claim and to ensure that approval of the proposed compromise is in the minor's best interest. This review necessarily entails the authority to review each portion of the proposed compromise for reasonableness and to adjust the terms of the settlement accordingly, including the fees and costs to be taken from the minor's recovery.[3] *Abrams*, 605 F.3d at 244. With this in mind, we address the district court's review of Ashley's proposed compromise and reallocation of attorney fees.

## II.  *Modification of the proposed compromise of Ashley's claim*

To recall, the proposed compromise of Ashley's claim allocated $109,187.26 to petitioner Gellner and $20,100 to petitioner Haley. In approving the compromise, the district court reallocated $63,466.77 as fees and costs to "attorneys" without further explanation. Petitioners now assert that the modified distribution

---

[3]We note that the modification here had no impact on the overall settlement amount of $238,000. Instead, the district court merely modified the distribution of requested attorney fees and costs to be taken from the minor's recovery after the Medicaid lien was satisfied.

was unfair, arguing that it unreasonably reduced Gellner's recovery and failed to provide compensation for Haley as guardian ad litem.[4]

Although NRS 41.200 is silent as to the standard for a district court to apply when reviewing a petition to approve the compromise of a minor's claim, we have otherwise applied a "fair and reasonable" approach for reviewing a lower court's decision to approve a settlement in which incompetent parties are involved. *Mainor v. Nault*, 120 Nev. 750, 758-59, 101 P.3d 308, 314 (2004). Similarly, district courts have great discretion to award attorney fees, and this discretion is tempered only by reason and fairness. *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864, 124 P.3d 530, 548-49 (2005). "[I]n determining the amount of fees to award, the court is not limited to one specific approach; its analysis may begin with any method rationally designed to calculate a reasonable amount," so long as the requested amount is reviewed in light of the factors set forth in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969). *Shuette*, 121 Nev. at 864-65, 125 P.3d at 549.

Here, the record demonstrates the district court's requisite consideration of the *Brunzell* factors in reaching its decision. *See Brunzell*, 85 Nev. at 349, 455 P.2d at 33 (directing the district court to consider four factors in calculating the reasonableness of attorney fees: (1) the qualities of the attorney, (2) the character of the work to be done, (3) the actual work performed by the attorney, and (4) the case's result). To begin, the district court reviewed Gellner's contingency fee agreement and the extensive briefing by the parties before reaching its decision. The district court then referenced Gellner's limited experience as a medical malpractice attorney. In considering the complex nature of Ashley's claims, the district court also highlighted Gellner's role in complicating the matter by noting the many amended motions, dismissals, and time-barred complaints resulting from attorney oversight. Finally, the district court balanced Ashley's lifelong special needs and potential for a multimillion dollar judgment against the proposed payment.

Thus, in light of this case's surrounding circumstances, the district court acted within its broad discretion by concluding that the

[4]Gellner also argues that the district court was required to first conduct an evidentiary hearing as to the reasonableness of fees and costs before making its ruling. We disagree, as NRS 41.200(1) provides that approval by the district court is based upon the filing of "a verified petition in writing." Here, the district court met and exceeded this requirement by reviewing the petition and also requesting supplemental information before ruling on the petition.

proposed allocation to petitioner Gellner was unreasonable. Accordingly, we deny writ relief in this regard.

The problem with the district court's reallocation, however, is that it did not allocate the attorney fees and costs awarded to petitioner Gellner separately from any guardian ad litem fees awarded to petitioner Haley. *See* NRS 159.0455(1) (''The guardian ad litem is entitled to reasonable compensation from the estate of the ward or proposed ward.''). Instead, the district court's order simply combined Gellner and Haley's recovery, treating them both as ''attorneys.'' Thus, based upon the district court's order, it is unclear whether Haley's guardian ad litem fees are included within the allocation of attorney fees, and if so, in what amount. Because the guardian ad litem is statutorily entitled to a reasonable amount in compensation, we grant petitioners' request for mandamus relief in this respect.

Accordingly, the clerk of this court shall issue a writ of mandamus instructing the district court to provide a distribution of the $63,466.67 that fairly and reasonably accounts for duties performed by Gellner and Haley in their roles as attorney and guardian ad litem, respectively. *See* NRS 159.0455(3).

## CONCLUSION

Because NRS 41.200 authorized the district court to modify the proposed compromise in the minor's best interest, the redistribution of settlement proceeds was proper, and we deny in part this writ petition. However, we grant in part this writ petition because the district court should have provided an explanation as to the allocation of fees between the attorney and the guardian ad litem.

DOUGLAS and HARDESTY, JJ., concur.