# IN THE SUPREME COURT OF THE STATE OF NEVADA

AARON L. KATZ,
Appellant,
vs.
INCLINE VILLAGE GENERAL
IMPROVEMENT DISTRICT, A
GENERAL IMPROVEMENT DISTRICT,
Respondent.

No. 71493

FILED

NOV 21 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a postjudgment order awarding attorney fees and costs. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

Appellant Aaron Katz sued respondent Incline Village General Improvement District (IVGID), seeking to invalidate various actions IVGID took between 2011 and 2014 on the basis that IVGID was abusing its statutory power. The district court adjudicated all of Katz's claims in favor of IVGID, and this court affirmed the district court's orders on appeal. *See Katz v. Incline Village Gen. Improvement Dist.*, Docket No. 70440 (Order of Affirmance, Feb. 26, 2018). Katz now challenges the district court's postjudgment order awarding IVGID attorney fees and costs under NRS 18.010(2)(b). We affirm.[1]

---

[1]In this disposition, we have attempted to address all of Katz's arguments that are cogently presented, supported by relevant legal authority, and properly raised in district court. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987); *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). To the extent that this disposition does not specifically address additional arguments that Katz raises, we have determined that those additional arguments do not warrant reversal.

SUPREME COURT
OF
NEVADA

(O) 1947A

19-47663

*Whether First Amendment principles apply*

Katz first argues that because he sued a government entity and his lawsuit served the public, First Amendment principles apply to immunize him from liability for attorney fees. To the extent that Katz is asking this court to extend the *Noerr-Pennington* doctrine, which immunizes petitioning activity in the antitrust context, to the award of attorney fees here, we decline. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 664-65 (1965); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961) (providing that legitimate petitioning activity intended to influence the government is immune from civil liability, even if it has anticompetitive effects, so long as it is not "a mere sham" to interfere with a competitor's business). Liability for attorney fees to a prevailing party is not the same as civil liability for filing a lawsuit. *See Vargas v. City of Salinas*, 134 Cal. Rptr. 3d 244, 254 (Ct. App. 2011) (explaining that "fee shifting is not civil liability within the meaning of the *Noerr-Pennington* doctrine"); *see also Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 373 (7th Cir. 1987) (characterizing "the proposition that the first amendment . . . has anything to say about fee-shifting statutes" as "too farfetched to require extended analysis").

Further, we are not persuaded that NRS 18.010(2)(b) violates Katz's First Amendment right to petition the government. It merely requires that Katz bear the costs incurred in exercising his rights. *Premier Elec. Constr. Co.*, 814 F.2d at 373 (reasoning that requiring the party responsible for creating the fees to pay those fees "is no more a violation of the first amendment than is a requirement that a person who wants to publish a newspaper pay for the ink, the paper, and the press"). Furthermore, Katz has failed to establish that his claims are protected

Supreme Court
OF
Nevada

(O) 1947A

2

speech and thereby entitled to absolute immunity under the First Amendment. *See Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983) (recognizing that the First Amendment protects the right to petition the government, but holding that "baseless litigation is not immunized by the First Amendment right to petition"); *Vargas*, 134 Cal. Rptr. 3d at 258 (upholding California's fee-shifting statute and explaining that the right to petition the government does not entitle a party to clog the courts and impair everyone else's right to justice). We therefore decline to apply First Amendment principles in the context of a postjudgment award of attorney fees under NRS 18.010(2)(b).

*Whether Nevada's anti-SLAPP statutes apply*

Katz also argues that he is entitled to immunity under Nevada's anti-SLAPP statutes. We disagree. Nevada's anti-SLAPP statutes provide a procedural mechanism for parties to seek dismissal of meritless lawsuits that chill free speech "before incurring the costs of litigation." *Coker v. Sassone*, 135 Nev., Adv. Op. 2, 432 P.3d 746, 748 (2019). IVGID's postjudgment motion for attorney fees is not a meritless lawsuit for anti-SLAPP purposes. Even if it were, Katz did not file a special motion to dismiss IVGID's motion for attorney fees and costs. *See* NRS 41.660 (requiring that a litigant file the motion within 60 days after service of the complaint and creating a two-pronged burden-shifting framework to guide district courts in determining whether dismissal is warranted). Nor did he satisfy his burden under the first prong of the anti-SLAPP analysis. *See* NRS 41.660(3)(a) (requiring the moving party to establish that the claim was "based upon a good faith communication in furtherance of the right to petition or the right to free speech"); NRS 41.637 (defining a "good faith communication" as one that "is truthful or is made without knowledge of its

falsehood"). Katz is therefore not entitled to immunity under Nevada's anti-SLAPP statutes.[2]

*Whether the district court abused its discretion in awarding IVGID attorney fees and cost under NRS 18.010(2)(b)*

IVGID moved for attorney fees and costs under NRS 18.010(2)(b), which authorizes a court to award attorney fees to a prevailing party when it finds that a party "brought or maintained [a claim] without reasonable ground or to harass the prevailing party." The district court granted IVGID's request, finding that Katz's lawsuit was baseless, unreasonable, and brought to harass IVGID. Katz now argues that the district court abused its discretion because he did not harass IVGID within the meaning of NRS 18.010(2)(b), his claims were not frivolous because they were complex issues of first impression, and at least one of his claims had merit because it survived multiple pretrial motions and proceeded to trial.[3]

This court reviews a district court's decision to award attorney fees for an abuse of discretion.[4] *See Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014). Here, we discern no abuse of discretion because the record supports the district court's findings and the district court did not base its decision on an erroneous view of the law. *See*

---

[2]Accordingly, we also conclude that Katz is not entitled to attorney fees under NRS 41.670, which authorizes the court to award attorney fees to a party who prevails on an anti-SLAPP special motion to dismiss.

[3]Katz makes various other arguments challenging the district court's award of attorney fees, but we conclude that these arguments are either waived, nonresponsive, unsupported by relevant legal authority, or incoherent, and decline to address them individually.

[4]Because we conclude that neither First Amendment principles nor Nevada's anti-SLAPP statutes apply here, we decline Katz's invitation to apply a "baseless litigation" or de novo standard of review.

*Bergmann v. Boyce*, 109 Nev. 670, 674, 856 P.2d 560, 563 (1993) (explaining that a district court abuses its discretion when it bases its decision on an erroneous view of the law or clearly disregards guiding legal principles), *superseded by statute on other grounds as stated in In re DISH Network Derivative Litig.*, 133 Nev. 438, 451 n.6, 401 P.3d 1081, 1093 n.6 (2017).

The record supports the district court's findings that Katz's lawsuit was baseless and unreasonable. The district court dismissed all but 1 of Katz's 24 claims through a series of orders that we affirmed. Katz argues that because one of his claims survived multiple pretrial motions and proceeded to trial, his lawsuit had merit. That 1 of his claims survived summary adjudication, however, does not excuse his 23 groundless claims. *See Bergmann*, 109 Nev. at 675, 856 P.2d at 563 ("The prosecution of one colorable claim does not excuse the prosecution of five groundless claims."). Regardless, it became abundantly clear at trial that Katz's sole remaining claim was likewise frivolous, as "IVGID had made every effort to accommodate Mr. Katz's numerous requests for documents" and "the only records not turned over to Mr. Katz either did not exist, or were privileged (as IVGID had always claimed)."[5]

The record also supports the district court's determination that Katz brought and maintained his lawsuit to harass IVGID. Throughout the years-long proceeding, Katz filed multiple motions to amend his complaint to add more claims against IVGID. His pleadings were nonresponsive and late, exceeded the page limit, included an avalanche of exhibits that were

---

[5]Katz argues that his claims were not frivolous because they were complex and involved issues of first impression, but these attributes are not mutually exclusive—a claim can be both complex and original, but frivolous nonetheless.

often duplicative, and sought to pursue actions that the court had expressly prohibited. His extensive public records requests continued up until the eve of trial, despite IVGID making every effort to accommodate Katz's requests.

We therefore conclude that the district court, having determined that Katz's lawsuit was frivolous, did not abuse its discretion when it awarded attorney fees and costs. *See* NRS 18.010(2)(b) (permitting courts to award attorney fees and requiring courts to liberally construe the statute "to punish for and deter frivolous or vexatious claims").

*Whether the amount of attorney fees and costs was reasonable*

The district court awarded IVGID $226,466.80 in attorney fees and $2,925.95 in costs. When awarding attorney fees, the district court must consider the factors this court provided in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 455 P.2d 31 (1969). *See Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 865, 124 P.3d 530, 549 (2005) (observing that courts must consider the *Brunzell* factors when determining the amount of fees to award, even though courts are granted a wide range of discretion in determining the amount). These factors are: (1) the quality of the advocate; (2) the character of the work, e.g., its difficulty, importance, etc.; (3) the work actually performed by the advocate; and (4) the result. *Brunzell*, 85 Nev. at 349, 455 P.2d at 33.

Katz focuses exclusively on the third factor—the work actually performed—and argues that IVGID's redactions to the billing statements made it impossible to evaluate the services rendered and that IVGID's attorney bills were not specific enough. In district court, he only challenged IVGID's redactions to Scott Brooke's (IVGID's in-house counsel)

memorandum of fees, so we limit our review to these redactions only.[6] *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

We agree that the redactions to Brooke's memorandum of fees make it difficult to evaluate the services he rendered and the fees IVGID incurred for his services. Nonetheless, we conclude that the district court relied on sufficient evidence to calculate a reasonable amount for Brooke's services. *See O'Connell v. Wynn Las Vegas, LLC*, 134 Nev. 550, 557-58, 429 P.3d 664, 670 (Ct. App. 2018) (holding that billing records are not required to support an award of attorney fees so long as the court can calculate a reasonable fee); *see also Shuette*, 121 Nev. at 864, 124 P.3d at 549 (emphasizing that "in determining the amount of fees to award, the court is not limited to one specific approach").

Specifically, the district court relied on a sworn statement from IVGID's attorney of record, Thomas P. Beko, that "Brooke's involvement was necessary to the defense of this matter, and the fees he charged are believed by Affiant to be reasonable and necessary in his capacity of official attorney for [IVGID]." The district court also relied on its familiarity with the lawyers involved in the litigation and the quality of their work. We have previously upheld awards of attorney fees based on similar evidence. *See, e.g., Herbst v. Humana Health Ins. of Nev., Inc.*, 105 Nev. 586, 591, 781 P.2d 762, 765 (1989) (holding that an affidavit documenting the hours of work

---

[6]Nonetheless, it appears that the rest of IVGID's billing statements are comprehensive and the redactions likely did not impair Katz's ability to dispute the expenses or the district court's ability to review them.

performed, the length of litigation, and the number of volumes of appendices on appeal was sufficient evidence to enable the court to make a reasonable determination of attorney fees, even in the absence of a detailed billing statement); *Cooke v. Gove*, 61 Nev. 55, 57, 114 P.2d 87, 88 (1941) (upholding an award of attorney fees based on, among other evidence, two depositions from attorneys testifying about the value of the services rendered). We therefore conclude that the district court did not abuse its discretion when it awarded IVGID attorney fees for Brooke's services, even though IVGID did not provide a detailed breakdown of Brooke's fees.[7]

Katz also argues that the district court abused its discretion in awarding costs because IVGID's verified memorandum of costs was insufficient. District courts have broad discretion to award costs. *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. 114, 120, 345 P.3d 1049, 1054 (2015). Before awarding costs, however, a court must determine that the costs were reasonable, necessary, and actually incurred. *Id.* Katz's primary argument on appeal is that IVGID failed to explain that its costs were "necessarily incurred." In support of its request for costs, however, IVGID listed every cost it incurred and attached receipts and documentation (including receipts for the clerk's fees, court reporter fees, photocopies, postage, and other necessary expenses, like transcription of IVGID's utility rate meetings). Although IVGID did not explicitly state that the costs were

_____

[7]We also conclude that IVGID presented sufficient evidence to establish that Brooke worked directly on this litigation. Brooke's memorandum of fees identifies the case name (Katz v. IVGID) and the fees incurred ($45,070.80). Further, IVGID provided billing statements from Beko's law firm, Erickson, Thorpe & Swainston, LTD., that document phone calls and email correspondence between firm attorneys and Brooke during the course of the Katz litigation.

SUPREME COURT
OF
NEVADA

(O) 1947A

"necessarily incurred" in its motion for fees and costs, it stated that it submitted its motion "pursuant to NRS Chapter 18." To the extent that this statutory reference is insufficient, we conclude that IVGID cured any defect in its opposition to Katz's motion to retax costs by thoroughly explaining how each cost was necessary. Further, we conclude that Katz, by failing to provide relevant legal authority, has failed to demonstrate that the district court abused its discretion in reviewing these explanations (which IVGID provided after it filed its verified memorandum of costs).

We therefore conclude that the district court did not abuse its discretion when it awarded IVGID $226,466.80 in attorney fees and $2,925.95 in costs, and therefore affirm the district court's order.

It is so ORDERED.



_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

cc:  Chief Judge, Second Judicial District
     Margaret M. Crowley, Settlement Judge
     Richard F. Cornell
     Erickson Thorpe & Swainston, Ltd.
     Washoe District Court Clerk

