Filed 9/25/14  Kempston v. Clark CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JUDITH KEMPTON, as Personal Representative, etc., et al., | B248713 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC374938) |
| v. | |
| MICHELE R. CLARK, | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County.  Steven J. Kleifield, Judge.  Reversed in part and affirmed in part.

Marcus, Watanabe & Dave, David M. Marcus, Eric Chomsky for Defendant and Appellant Michele R. Clark.

Charles G. Kinney for Plaintiff and Appellant Judith Kempton.

Nina Ringgold for Plaintiff and Appellant Charles G. Kinney.

_____

The parties appeal a postjudgment order awarding contractual attorney fees to Michele Clark, as the prevailing party. Clark contends that (1) she is entitled to attorney fees for federal court proceedings and (2) Charles G. Kinney should be jointly liable for the debt. We agree that Kinney is jointly liable for the debt, but the superior court cannot award attorney fees for federal proceedings. Kinney's jurisdictional claim is unfounded. We also affirm the postjudgment denial of Kinney's motion to vacate an order declaring plaintiff Kimberly Kempton a vexatious litigant.

## FACTS

### *Background*[1]

In 2005, Kimberly Kempton and Charles G. Kinney purchased property in Silver Lake from Michele Clark. Kinney and Kempton soon began a spate of lawsuits against Clark, Clark's real estate brokers, several neighbors, the neighbors' children, and the City of Los Angeles. The litigation mainly concerned easements and fences that were in place when Kinney purchased the property. Ultimately, Kinney lost all of the lawsuits he filed.

On October 27, 2008, at the request of Clark and her brokers, the superior court declared Kinney to be a vexatious litigant and ordered him to post a $20,000 bond because there is "not a reasonable probability he will prevail" in this lawsuit. Kinney dismissed himself "without prejudice" on November 7, 2008. The trial court signed a formal order declaring Kinney a vexatious litigant on November 19, 2008. Kinney continues to be Kempton's attorney in all litigation.

Following numerous unmeritorious appeals, this court declared Kinney to be a vexatious litigant in 2011. (See fn. 1, *ante*.) In May 2012, the trial court declared Kempton to be a vexatious litigant in this case. Kinney's request to appeal Kempton's vexatious litigant status was denied. Kempton died on June 7, 2013.

---

[1] The background comes, in part, from *In re Kinney* (2011) 201 Cal.App.4th 951, declaring Kinney to be vexatious litigant in *Kempton v. City of Los Angeles* (BC413357), which did not involve appellant Clark. Kinney's petition for review of *In re Kinney* was denied by the Supreme Court on February 29, 2012, in S199467.

In one of his many lawsuits stemming from the Silver Lake property purchase, Kinney claimed that Clark lacked marketable title. Clark successfully demurred to the complaint, a ruling that was affirmed on appeal by Division One of this district. The court found that when Kinney and Kempton purchased the Silver Lake property, the neighbor's fence that encroached on the property "was in place," "permanent," and "open and notorious," so that the purchasers were presumed to have contracted to accept the land subject to the fence. (*Kempton v. Clark* (Jun. 30, 2008, B200893) [nonpub. opn.].) Clark was awarded attorney fees and costs of $9,349.

This lawsuit alleges that Clark and her brokers breached the real estate contract or committed fraud by failing to disclose material defects relating to Kinney's purchase of the Silver Lake property, such as dry rot, galvanized pipes, the fence problems, zoning violations and so on. The pleading acknowledges that other pending litigation involves "some of the same issues."

Clark's brokers sought summary judgment. The trial court observed that Kempton contested few of the undisputed material facts, and the evidence she cited did not support her position or contradicted admissions she made during discovery. The court found that the brokers disclosed—and Kempton and Kinney knew about—the alleged defects in Clark's property: they elected to purchase the property despite the defects. The trial court entered summary judgment for the brokers. This court affirmed. (*Kempton v. Prudential California Realty* (Nov. 3, 2011, B227418) [nonpub. opn.].) In a separate appeal, we affirmed the trial court's award of costs to the brokers, as the prevailing parties, and imposed sanctions for a frivolous appeal on Kinney and Kempton. (*Kempton v. Prudential California Realty* (Nov. 16, 2011, B231162) [nonpub. opn.].)

*Clark's Bankruptcy*

In July 2010, Clark declared bankruptcy. The expense of defending against Kinney's claims was a substantial factor leading to Clark's bankruptcy; she expected to stop Kinney "from continuing to terrorize me with his baseless claims." Clark's expectations were unrealized: soon after she petitioned for bankruptcy, Kempton and

3

Kinney filed a "complaint to determine dischargeability of debt." They alleged that Clark failed to disclose information about her property during escrow, and they sought to rescind the purchase agreement. In March 2011, the bankruptcy court ordered Clark to appear in state court to defend against this lawsuit.

### The Lawsuit Returns to State Court

When this case returned to state court, Kinney continued to insist that he had a meritorious case against Clark, despite the trial court's findings—as to Clark's brokers— that all material defects regarding Clark's property were known to Kempton and Kinney, but they chose to purchase the property anyway. Clark prepared a motion for summary judgment challenging Kinney's claims of nondisclosure, after Kinney rejected Clark's demand that he dismiss this case. Clark's attorneys warned Kinney that they would seek attorney fees and expenses from him and Kempton if they did not dismiss this "frivolous" case. In addition to seeking summary judgment, Clark asked the trial court to declare Kempton a vexatious litigant.

Kinney opposed both the summary judgment and the vexatious litigant motions. In May 2012, the trial court declared Kempton to be a vexatious litigant in this action because she is merely acting as Kinney's proxy and he is using her as his puppet. The court noted that Kempton did not submit a declaration disputing that she is Kinney's proxy or puppet.

After the trial court granted Clark's vexatious litigant motion, Kempton failed to post the $185,000 bond required by the court. The trial court dismissed this case with prejudice on June 15, 2012, for failure to post the bond. Kinney's request to appeal the trial court's judgment was denied.

### Subsequent Proceedings in Bankruptcy Court

After losing in state court, Kinney tried to persuade the bankruptcy court to vacate the trial court's order. The bankruptcy court denied the motion to vacate. In its ruling, the federal court noted that there was not going to be a state court trial "because [Kempton] failed to post the required security bond" as a vexatious litigant. The bankruptcy court gave "full faith and credit" to the superior court's dismissal. In March

4

2014, the bankruptcy court reopened Kempton's "adversary" case against Clark, for the purpose of dismissing it.

Kinney removed this case to federal district court. In December 2012, the district court remanded this matter to state court, for lack of federal subject matter jurisdiction. Kinney filed a notice of appeal in federal court, challenging the remand to state court.

<u>Clark's Motion for Attorney Fees</u>

When the trial court dismissed this case, Clark moved for an award of contractual attorney fees. She requested an award of $176,880 against Kinney and Kempton, jointly. Kinney opposed the motion, claiming in part that Clark had no standing to claim attorney fees and costs, due to her bankruptcy.[2]

Clark obtained an order from the bankruptcy court in October 2012, stating that "All of [Clark's] right to recover costs and attorneys' fees and costs from Kempton and Kinney arising from litigation concerning the Fernwood Property are deemed to have been abandoned by the trustee." The court noted that recovering attorney fees from Kempton and Kinney is "burdensome" and because they "are vexatious litigants who in all likelihood [will] aggressively fight all effects to recover attorneys' fees against them." Further, the fees are "of inconsequential value" to the bankruptcy estate because they are fully encumbered by the lien of Clark's attorneys. The bankruptcy court stated that the amount of fees recoverable under the real estate contract "will be adjudicated in the state court." The court found that Kempton and Kinney have no standing because they "are not creditors of this estate. . . . As non-creditors, Kempton and Kinney have no interest in the administration of this Estate."

After Kinney's unavailing detours through federal court, Clark supplemented her request for attorney fees. She sought additional fees and costs for having to defend

---

[2]     Kinney also argued that Clark waived her right to attorney fees by failing to mediate before she "resorted to litigation." He forgets that he is the one who sued Clark—three times—without mediating his claims.

5

against Kinney's failed attempt to remove this case to federal court; his motions for reconsideration in federal court; and related matters.

Kinney opposed the motion, arguing that his pending appeal in the Ninth Circuit of the district court's order remanding the case to state court prevents Clark from having a hearing on her request for attorney fees. However, the federal courts denied Kinney's request to stay the superior court hearing on attorney fees pending the outcome of the federal appeal.

On March 13, 2013, the superior court granted Clark's motion for attorney fees. It ordered Kempton to pay Clark $167,678.50, but denied Clark's request to impose fees on Kinney as well. Clark appeals from the attorney fee order.[3] Kempton and Kinney cross-appeal the same order. They also appeal from a May 15, 2013 trial court ruling denying their motion to vacate the 2012 vexatious litigant prefiling order against Kempton.

## DISCUSSION

### Michele Clark's Appeal

Clark seeks to (1) augment the award to include fees incurred while defending against Kinney's futile attempts to move this dispute to federal court, and (2) impose the attorney fee award against Kinney and Kempton jointly and severally. A postjudgment award of contractual attorney fees is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(2); *Whiteside v. Tenet Healthcare Corp.* (2002) 101 Cal.App.4th 693, 706; *Milman v. Shukhat* (1994) 22 Cal.App.4th 538, 540, fn. 2.)

In an action in state court on a contract containing an attorney fees clause, the prevailing party "shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).)[4] While the trial court generally has discretion to determine the amount of an award of attorney fees, de novo review is warranted where

---

[3]    Kinney acknowledges that he tried to remove this appeal to federal court, which promptly returned the case, sua sponte.

[4]    For purposes of recovering costs, a defendant is the "prevailing party" if the plaintiff recovers no relief from the defendant. (Code Civ. Proc., § 1032, subd. (a)(4).)

6

the facts are undisputed and the question is whether the criteria for an award of attorney fees have been satisfied. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142; *Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, 724.)

We first turn the question of whether Clark is entitled to recover fees and costs she incurred while litigating in federal court. Clark lists two pages of attorney work in her brief, totaling $18,775. The work includes opposing the removal of this case to federal court; the remand from federal court to state court; a motion for reconsideration filed in bankruptcy court when it closed the adversary case; a motion for reconsideration in federal district court; Kinney's appeals and writs in the Ninth Circuit Court of Appeals; and motions in federal court to stay state court proceedings.

Contractual attorney fees incurred while litigating an adversary complaint in bankruptcy court may be recoverable, if a claim for such fees is enforceable under state law. (*Travelers Casualty & Surety Company of America v. Pacific Gas & Elec. Co.* (2007) 549 U.S. 443, 450-453; *Charlie Y., Inc. v. Carey* (Bankr. 9th Cir. 2011) 446 B.R. 384, 390.) Kinney's complaint in bankruptcy court sought rescission of the real estate purchase agreement for Clark's alleged failure to disclose material facts about her property. Under California law, the prevailing party may recover attorney fees in a lawsuit to rescind a real estate purchase agreement, because it is an action on the contract. (*Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 840-841.)

Kinney's attempt to have the bankruptcy court rescind the purchase agreement in an adversary proceeding may well fall within the parties' attorney fees clause giving Clark, as the prevailing party, the right to recover fees "in any action [or] proceeding . . . arising out of this Agreement." Kinney's efforts to remove this breach of contract case to federal district court in all likelihood similarly arises from the parties' real estate contract. The problem for Clark is that she needs to ask the federal courts to make these determinations and award the fees and costs she seeks.

Clark cites a case in which a judgment creditor successfully forced the dismissal of a judgment debtor's bankruptcy case. (*Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927.)

7

The creditor's "efforts taken in the bankruptcy court . . . were incurred to enforce the superior court judgment." (*Id.* at pp. 929-930.) The *Jaffe* court relied on Code of Civil Procedure section 685.040, which allows a creditor to recover the costs of enforcing a judgment. (*Jaffe* at pp. 934-935.) Once the defendant's bankruptcy was dismissed, her debt was restored to pre-bankruptcy status and unaffected by bankruptcy concepts. (*Id.* at p. 937.) By imposing attorney fees and costs on the defendant, the court hoped to discourage judgment debtors from filing "bogus bankruptcy petitions." (*Id.* at p. 938.)

The *Jaffe* case and Code of Civil Procedure section 685.040 are inapposite. Clark is the person who filed for bankruptcy protection. She is not a creditor seeking to dismiss a bogus bankruptcy petition in order to enforce a pre-existing judgment. It appears that since 2010, Clark has been subject to the jurisdiction of the bankruptcy court. The appropriate venue for Clark to seek recovery of contractual fees and costs incurred in the federal courts is in bankruptcy court and in the federal district court. The federal courts have their own rules regarding attorney fee awards. (See *Charlie Y., Inc. v. Carey*, *supra*, 446 B.R. at pp. 391-393; *Fry v. Dinan* (Bankr. 9th Cir. 2011) 448 B.R. 775, 783-786.) The trial court did not err by declining to award attorney fees for the federal litigation. Clark has cited no authority allowing the superior court to award attorney fees for federal litigation. Clark's remedy is in federal court if she ultimately prevails there.

Clark's second contention is that the award of attorney fees should be against Kinney and Kempton, jointly and severally. The court refused to impose the award against Kinney because he dismissed himself as a plaintiff in November 2008, *after* the trial court after declared him a vexatious litigant in this case, but before the court signed a formal order.

The trial court was not stripped of power to sign an order formalizing the ruling it made on October 27, 2008. A voluntary self-dismissal does *not* deprive the court of jurisdiction to subsequently sanction the plaintiff for filing a baseless case. (*Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 393-398; *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 974-976.) The reason is that sanctions are a collateral issue. (*Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1124-1125.) That reasoning applies equally

8

to a vexatious litigant finding, which is a collateral issue that affects a litigant's status not only in the pending case, but in all cases, even ones that have not yet been filed.

The voluntary dismissal statute was never intended to allow dismissal "by plaintiffs who, when led to suppose a decision would be adverse, would prevent such decision by dismissing without prejudice and refiling, thus subjecting the defendant and the courts to wasteful proceedings and continuous litigation." (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 909.) Here, the trial court had already ruled that Kinney was a vexatious litigant. Kinney could not wrest away the trial court's control over the proceedings—or elude its finding that Kinney was unlikely to prevail on the merits—by dismissing himself "without prejudice," leaving open the likelihood he would institute identical litigation against the same defendants, in front of a different trial judge. Dismissing oneself to prevent a judge from signing a vexatious litigant order would defeat the purpose of the vexatious litigant statutes, which is to prevent abuse of the judicial process. (*First Western Development Corp. v Superior Court* (1989) 212 Cal.App.3d 860, 867.)

A voluntary dismissal can be used against a vexatious litigant. "An action which is ultimately dismissed by the plaintiff, with or without prejudice, is nevertheless a burden on the target of the litigation and the judicial system . . . . A party who repeatedly files baseless actions only to dismiss them is no less vexatious than the party who follows the actions through to completion." (*Tokerud v. CapitolBank Sacramento* (1995) 38 Cal.App.4th 775, 779.)

Clark maintains that Kinney is the de facto litigant, despite removing his name from the case caption. Clark's contention is borne out by the course of events after November 2008.

Following his purported self-dismissal, Kinney continued to litigate in Kempton's name. After years of unmeritorious appeals, this court declared in 2011 that "Attorney Kinney is using Kempton as his proxy or puppet in order to continue his career as a vexatious litigant." (*In re Kinney*, *supra*, 201 Cal.App.4th at pp. 953-954.) We wrote that Kinney "is purporting to act as attorney for Kimberly Kempton. . . . [¶] In each

9

appeal, Kinney is effectively 'the litigant' because he owns the real property that spawns all of this litigation and stands to benefit personally from the outcome of this litigation. Kinney is not acting as a 'neutral assessor[] of [Kempton's] claims, bound by ethical considerations not to pursue unmeritorious or frivolous matters on behalf of a prospective client. [Citation.] Instead, Kinney is using Kempton's name—a 'strawman' plaintiff— while he pursues obsessive, meritless litigation against the hapless residents of this state who have the misfortune to be his neighbors. Kinney has demonstrated a pattern of using the judicial system as a weapon in an unrelenting quest to get advantages that he does not deserve, imposing onerous litigation costs on his opponents that he does not incur himself because he is a lawyer." (*Id.* at p. 959.)

Eventually, the trial court declared Kempton to be a vexatious litigant in this case in 2012, because she was merely Kinney's puppet. Kempton made no attempt to dispute that she is Kinney's puppet or proxy. The case was dismissed when Kempton failed to post the bond required by the vexatious litigant order.

Tellingly, although Kempton died in June 2013, Kinney's litigious onslaught continues, unabated. Kempton's death made no difference because Kinney is the sole driver of this litigation. He has repeatedly tried to subvert the superior court's rulings *after* the bankruptcy court sent the dispute to state court, gave full faith and credit to the trial court's dismissal of this case, and found that Kinney and Kempton have no standing because they are not creditors of Clark's bankruptcy estate.

In sum, there are two final decisions—one from this court and one from the trial court—ruling that Kinney purports to act as attorney for Kempton, but "[i]n reality, Kempton is merely acting as a puppet or conduit for Kinney's abusive litigation practices." (*In re Kinney*, *supra*, 201 Cal.App.4th at p. 959.) Kinney filed this lawsuit in his own name, giving the courts jurisdiction over him. Kinney has continued to prosecute this case despite the vexatious litigant prefiling orders: his name and signature are on every document filed in this case. His self-dismissal was a subterfuge without effect: he has been a party throughout the litigation.

10

Because Kinney is the source of the litigation stemming from his purchase of the Silver Lake property—and signed the contract with the attorney fees clause—it is appropriate that he be held jointly and severally liable for Clark's attorney fees. The courts are authorized to amend a judgment to add a judgment debtor to see that justice is done. (Code Civ. Proc., § 187; *Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1072 [addition of a new debtor stems from the alter ego doctrine, "which is that an identity exists between the new party and the original party"].)

When a lawyer exercises "pervasive" control over litigation that he has an interest in, he may be personally added as a judgment debtor: the lawyer's efforts to have the litigation proceed provide equitable grounds for imposing liability on him. (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1192-1193.) The facts in this case are undisputed and well-documented in a series of trial court orders and appellate decisions stretching over nearly a decade. The facts lead to one conclusion: Kinney is a party to this lawsuit.

Kinney told the trial court that when buying the Silver Lake property, he knew he was """"buying litigation."""" (*In re Kinney*, *supra*, 201 Cal.App.4th at p. 955.) He caused the state and federal litigation. Having lost, he now owns the bill for his abusive conduct.

We would be remiss by failing to point out a troubling conflict of interest between Kinney and his client Judith Kempton, who is the personal representative of the Estate of Kimberly Kempton and mother of the deceased. The interest of the Estate is to *reduce* its liability to Clark by transferring responsibility to Kinney, whose conduct in prosecuting this lawsuit led to the imposition of the attorney fees at issue in this appeal. A neutral advocate for the Estate—one who does not have a personal financial interest in the outcome of the appeal—would surely argue that Kinney should be charged with the fee award. Instead, we have Attorney Kinney trying to burden his client with a bill he wishes to evade himself. The ethics of this situation are dubious at best.

11

## 1. Appeal of the Attorney Fees Order

After Clark filed an appeal of the trial court's attorney fee order, Kinney and Kempton cross-appealed the same order, on the grounds that "a trial has never occurred in State Court or Bankruptcy Court." Despite the limited ground stated in the notice of appeal, the opening brief is an incoherent shotgun attack on virtually every order made in this case—and in the related federal cases—since 2008.

Kinney invokes the exclusive jurisdiction of the bankruptcy court. The bankruptcy court ordered the parties to this lawsuit to resolve their dispute in state court, then directed that the state court determine the amount of attorney fees owed to Clark after Clark prevailed when the case was dismissed. The bankruptcy court gave full faith and credit to the superior court's dismissal of this case; it found that Kinney and Kempton are not creditors of Clark's bankruptcy estate and have no standing; and it dismissed their adversary case against Clark. No bankruptcy stay prevented the trial court from exercising jurisdiction or awarding fees. The federal appeals court rejected Kinney's request for a stay pending the outcome of his federal appeal. While exercising its jurisdiction, the trial court had the right to maintain orderly proceedings by declaring Kempton to be a vexatious litigant.

Kinney assails any exercise of jurisdiction over him since his purported self-dismissal "without prejudice" in November 2008, *after* the trial court declared him a vexatious litigant. The dismissal was a subterfuge to avoid the effect of the prefiling order. It failed to stem his "persistent and obsessive campaign of litigation terror." (*In re Kinney*, *supra*, 201 Cal.App.4th at p. 953.) Even Kempton's death has not ended Kinney's fruitless and costly efforts to benefit himself.

Kinney knew that the trial court was about to sign the formal vexatious litigant order. The trial court's vexatious litigant finding states that "there is no reasonable probability that Kinney will prevail in the instant litigation against Defendants. Defendants' evidence demonstrates that Kinney was aware of the defects purportedly hidden from him by both the seller [Clark] and [her brokers]. Kinney provided no

12

counter evidence to dispute the documents attached by Defendants. Kinney does not have a reasonable probability of prevailing on the merits."

In this instance, the vexatious litigant finding was "an order in aid of the court's inherent power to control its jurisdiction." (*Muller v. Tanner* (1969) 2 Cal.App.3d 438, 444.) Ultimately, this court made an independent vexatious litigant finding that Kinney is the de facto plaintiff, using Kempton as a proxy for his harassing litigation. This determination is final and the Supreme Court denied review.

None of Kinney's six lawsuits arising from his purchase of the Silver Lake property had any merit. Kinney points to an appeal in which he succeeded, *on demurrer*. (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344.) Kinney refuses to acknowledge that he failed to prove his claims and *lost on the merits* at trial. The adverse judgment was affirmed on appeal by Division Three of this appellate district. (*Kempton v. City of Los Angeles* (Dec. 19, 2012, B236973) [nonpub. opn.].)

Kinney challenges Clark's retainer agreement with her attorneys. Neither Kinney nor Kempton have standing to question Clark's consent to the attorneys' lien; or whether the bankruptcy trustee accepted the attorney fee/lien agreement; or whether the debt owed to the attorneys was discharged. The bankruptcy court—which controlled all of these issues—issued an order stating that the amount of fees Clark may recover under the parties' real estate contract "will be adjudicated in the state court" after determining that Clark's right to recover fees and costs was abandoned by the bankruptcy trustee. The trial court did as it was instructed. The fees are payable to Clark directly. Any question of dischargeability had to be taken up with the bankruptcy court, which has, in any event, dismissed Kinney and Kempton's "adversary" case against Clark.

Kinney maintains that Clark has "unclean hands" because she refused to accept federal jurisdiction. Kinney's attempt to secure a jury trial in bankruptcy court failed: the court lifted the automatic stay and ordered the parties to litigate in state court. Not until page 46 of his brief does Kinney concede that the bankruptcy court lifted the stay. Clark has proceeded with federal court approval at every stage of this proceeding. Instead, it is Kinney who refuses to accept federal court rulings. He writes, "it does not

13

matter what the bankruptcy court did between 2011 and 2012," when it lifted the bankruptcy stay in this case. Kinney cannot simultaneously evoke federal "exclusive" bankruptcy jurisdiction and then reject the federal court's rulings by characterizing every one of them as "error."

**2. Appeal of the Order Refusing to Vacate the Vexatious Litigant Finding**

On November 16, 2012, Kinney filed a motion "to revise, vacate, or clarify" the May 18, 2012 order declaring Kempton to be a vexatious litigant. The trial court denied the motion on May 15, 2013. Appellants filed their notice of appeal on May 29, 2013, challenging the denial of their motion. Kempton died nine days after the notice of appeal was filed.

Clark asserts that the appeal is untimely. The denial of a motion to vacate pursuant to Code of Civil Procedure section 473 is an appealable postjudgment order. (*Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1469; *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1394.) The time for taking an appeal starts running when the motion to vacate is denied. (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1299.) This appeal was taken within days after the ruling denying relief and is timely.

Though timely, the appeal is moot. An appeal becomes moot when the appellate court is unable to grant any effectual relief or affect substantial rights. (*City of Lodi v. Randtron* (2004) 118 Cal.App.4th 337, 363; *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054-1055; *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132.) This court cannot grant any practical relief to Kempton from the trial court's vexatious litigant prefiling order: Kempton, now deceased, can no longer file any new litigation.

A motion for relief "shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (Code Civ. Proc., § 473, subd. (b).) The time span between the May 18, 2012 vexatious litigant order and the motion for relief is 182 days. Kinney's motion for relief offered no explanation for the 182-day delay. The trial court could, within the bounds of its discretion, have denied the motion because it was not filed within a reasonable time.

14

On appeal, Kinney does not attempt to support the arguments he made in his motion for relief.  Instead, he argues that the trial court's order should be reversed because it is based on *In re Kinney*, *supra*, 201 Cal.App.4th 951.  He maintains that there was a purported lack of personal and subject matter jurisdiction over him.  We have already addressed and rejected the jurisdictional issue in this opinion.

## DISPOSITION

The postjudgment award of attorney fees and costs is reversed to the extent that it fails to specify that Charles Kinney and Kimberly Kempton are jointly and severally liable for the award of fees and costs.  In all other respects, the order awarding attorney fees and costs is affirmed.  The postjudgment order denying Kinney's and Kempton's motion to vacate the judgment is affirmed.  Kinney and the Estate of Kimberly Kempton to bear all costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.